**James POLLARD and Harold Brown, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 877S551.**

Supreme Court of Indiana.

April 25, 1979.

498

Harriette Bailey Conn, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellants.

Theo. L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellants, James Pollard and Harold Brown, were each convicted of one count of first degree murder, one count of second degree murder and two counts of kidnapping at the conclusion of a jury trial in the Monroe Superior Court. On February 14, 1977, both Pollard and Brown were sentenced to four concurrent terms of life imprisonment.

Appellants' joint appeal presents ten issues for our review, concerning: (1) the sufficiency of the evidence on all counts; (2) denial of their motion to suppress; (3) denial of their motion to dismiss; (4) the giving of a certain preliminary jury instruction; (5) the admission of alleged hearsay testimony; (6) the admission of State's exhibits No. 73 and No. 74; (7) the admission of State's exhibit No. 79; (8) the trial court's refusal to allow the defense to introduce former testimony of an unavailable witness; (9) one of the final instructions, and; (10) the propriety of the sentencing.

I.

The evidence presented at trial disclosed that on the evening of November 25, 1975, appellants, Pollard and Brown, were in an automobile owned by Pollard's wife, along with Charles Thomas and Ernest Bell. Pollard told Thomas that "two dudes" had "ripped him off" earlier that day and that he intended to find out why they had done so. Pollard asked Bell whether he had any "fire" and Bell responded that he did not. Pollard then stopped the car in front of an apartment on Line Street in Evansville. Bell went into the apartment and returned to the car carrying a shotgun. Pollard was also carrying a firearm.

The four men proceeded to another apartment building on Line Street. Pollard, Brown and Bell went inside, leaving Thomas with the automobile. Present inside the apartment were the murder victims, Ronald Russell and Charles Pettit, and Cynthia Briscoe.

Briscoe testified that while she was talking to Pettit in the kitchen and Russell was asleep in the bedroom, she heard a knock at the door. When she answered the door she saw Pollard, Brown and Bell. Bell was holding a shotgun. The men forced their way into the apartment and Briscoe hid in a bedroom closet where she overheard Pettit say, "Man, let's rap about this." Briscoe heard appellant-Brown reply, "Man, fuck you," followed by several gunshots.

Bell then entered the bedroom with the shotgun and forced Ronald Russell out of bed and into the kitchen. Briscoe heard Russell scream. Bell reentered the bedroom and took Briscoe into the kitchen where she saw Pollard, holding a knife, standing over the bodies of Russell and Pettit. Bell stated that he did not know what they should do with Briscoe but that she was going with them.

Pollard went outside and moved his automobile around to an alley. Thomas, who had waited outside, asked Pollard "Did I hear any shots?" and Pollard responded, "No, you didn't." Pollard and Bell ordered Cynthia Briscoe to take blankets off the bed and wrap up the two bodies. Bell then ordered Briscoe to help carry the bodies to the car or he would blow her head off. When the bodies of Russell and Pettit were placed in the trunk of the car, Pollard observed that Russell was still breathing and said, "He's not dead." Someone replied, "Don't worry about it, he can't swim."

With the bodies of Russell and Petit in the trunk the four men and Cynthia Briscoe drove to Kentucky. When they came to a rural area, they stopped the car and Pollard and Brown dumped the bodies in a ditch. When they returned to the car, Pollard stated that Russell had been alive so he shot Russell in the head. The five then returned to Indiana where Bell, Brown and Cynthia Briscoe took a room at the Greer Motel in Evansville. After Bell and Brown had fallen asleep, Briscoe was able to contact the motel manager who called police. Bell and Brown were captured after fleeing from the motel and Pollard was arrested later in Detroit, Michigan.

At trial, a pathologist testified that Ronald Russell suffered seven stab wounds but

died as a result of a gunshot wound in the head. Charles Pettit received shotgun wounds in the neck, chest, and arm, and a bullet wound in the head. Pettit died either from the shotgun wounds or the head wound.

Appellants, Pollard and Brown, were convicted of the premeditated murder of Ronald Russell, the second degree murder of Charles Pettit and kidnapping Russell and Cynthia Briscoe. They challenge the sufficiency of the evidence as to all counts.

■ With respect to their premeditated murder conviction, appellants claim that the State failed to prove that they kidnapped Russell in Indiana and, as part of a continuous plan, transported Russell into Kentucky, where he was killed. This argument ignores the testimony of Cynthia Briscoe. Briscoe stated that when the bodies were placed in the trunk, Pollard noticed that Russell was still breathing. Someone then remarked that they should not worry, "he can't swim." Briscoe further testified that when the bodies were dumped in Kentucky, Pollard told her that Russell was still alive so he had shot Russell in the head. This evidence was sufficient to show a continuous plan to transport Russell from Evansville to Kentucky for the purpose of killing him. It was also sufficient to support the conviction for kidnapping Russell.

■ In regard to the second degree murder conviction, appellants argue that there was no evidence presented tending to prove the elements of intent or malice. We think the evidence previously set out amply demonstrated that appellants killed Charles Pettit with the requisite malicious intent.

■ Appellants' final sufficiency argument concerns their conviction of kidnapping Cynthia Briscoe. Appellants concede that the testimony of Briscoe was sufficient to show a kidnapping, however, they contend that her testimony was incredible. It is the function of the jury and not this Court, to judge the credibility of witnesses.

We therefore hold that there was sufficient evidence to support appellants' convictions on all counts.

## II.

When the Evansville Police arrived at the Greer Motel on the morning of November 26, 1975 and arrested Bell and appellant Brown, Cynthia Briscoe supplied them with the identities of the four men involved in the crimes and also described the vehicle used as a 1964 white over blue Chevrolet with a dented trunk. At 12:49 p. m., the police discovered an automobile matching this description legally parked near appellant Pollard's residence. A vehicle registration check indicated that the auto was owned by a Willie B. Pollard. The investigating officers stated that they observed a dent in the trunk and what appeared to be blood on various exterior portions of the auto. Several photographs of the auto were taken while it remained parked and a towing service was called. No officers touched the car at this time although two stated that they peered through the windows and observed blood on the dashboard and beer cans on the front seat. The auto was then towed to a garage and impounded in order to secure it so that police could obtain a search warrant and because the weather was getting bad and police did not want snow on the car.

At the garage, a police officer began an inventory of the vehicle's contents, which entailed his entry into the front seat area and the removal of those items in plain view. One of the items removed was a knife which had been partially visible. Another officer joined the inventory at approximately 3:00 p. m. This officer removed certain items from the rear seat and stated that he observed the barrel of a firearm which was not then removed. At about 6:00 p. m., a third officer arrived at the garage armed with a search warrant. Pursuant to the warrant, the officers then removed the firearm, searched the trunk and glove box and lifted fingerprints from items in the trunk. Appellants moved to exclude all of the seized evidence in a pretrial motion to suppress which was denied after a hearing.

As a threshold matter, the State questions appellants' standing to challenge the legality of the search. Appellants reply that the searched vehicle was owned by Willie Pollard, thus conferring a possessory interest in the vehicle to her husband, appellant James Pollard. No argument is made in support of appellant Brown's claim of standing nor do we believe that any could be in the light of the recent decision in *Rakas v. Illinois,* (1978) —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387. In holding that a mere passenger in an automobile owned by another may not complain of an unlawful search of the vehicle, the Supreme Court in *Rakas* stated:

" 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections."

*Id.* at —— U.S. ——, 99 S.Ct. 425, 58 L.Ed.2d 394–95 (citations omitted). The *Rakas* court further held that in cases involving Fourth Amendment search and seizure claims, the concept of standing is no longer to be treated as a matter apart from the substantive merits of the claim. Traditionally, the resolution of a Fourth Amendment issue required a two-party inquiry: (1) whether the defendant had standing to challenge the search, and; (2) if the defendant had standing, was the search and seizure contrary to the Fourth Amendment. Under traditional Fourth Amendment analysis, a defendant could establish standing by showing that he had a possessory or proprietary interest in the searched premises, or that he was legitimately on the premises at the time of the search, or that possession of the seized evidence was an essential element of the crime charged. *Barnes v. State,* (1978) Ind., 378 N.E.2d 839.

*Rakas* purported to alter this approach by merging what were two separate inquiries, into one. "Analyzed in these terms, the question is whether the 'challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." *Id.* at —— U.S. ——, 99 S.Ct. 429, 58 L.Ed.2d 399. Evidence need only be excluded at trial where it was seized in violation of the individual defendant's Fourth Amendment rights.

It seems to us that this new approach also requires the Court to ask two questions: (1) was there a constitutional violation, i. e., was the search and seizure unreasonable within the meaning of the Fourth Amendment, and; (2) if so, were the rights thereby violated the rights of the defendant or some other person. *Rakas* suggests that the answer to this second question may be obtained by determining whether or not the defendant had a legitimate expectation of privacy in the searched premises or property. *Id.* at —— U.S. ——, 99 S.Ct. 430, 58 L.Ed.2d 401. *See generally, Katz v. United States,* (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Thus, a person who was legitimately on the searched premises could not have the seized evidence suppressed unless he was also able to establish that he had a legitimate expectation of privacy in the premises. The reasonableness of the search, or course, turns upon whether it was carried out pursuant to a valid warrant or was made under circumstances giving rise to an exception to the warrant requirement. This latter determination is made on a case by case basis. *South Dakota v. Opperman,* (1976) 428 U.S. 364, 372, 96 S.Ct. 3092, 3098–99, 49 L.Ed.2d 1000, 1007; *Highsaw v. State,* (1978) Ind., 381 N.E.2d 470, 471.

In the present case, assuming *arguendo,* a Fourth Amendment violation occurred in regard to the search of the Pollard automobile, the rights thereby infringed were not the rights of appellant Brown. The holding in *Rakas* instructs us that if Brown had

been present as a passenger in the vehicle at the time of the search, he would not have had a legitimate expectation of privacy such that he could benefit by the suppression of evidence seized therein. It follows that if the status of passenger does not carry with it the requisite privacy interest in a vehicle, a person who is not even present would have even less interest in another's vehicle. The motion to suppress was thus properly denied as to appellant Brown.

Appellant Pollard's situation is somewhat different. The searched automobile was apparently owned by Pollard's wife. The question then is whether or not Pollard has established that he had a legitimate expectation of privacy in an automobile owned by his wife. As the State points out, Pollard did not establish that his use of the vehicle was within his wife's permission. However, the *Rakas* court pointed out that in defining the scope of Fourth Amendment interests, "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." *Rakas, supra,* at —— U.S. ——, 99 S.Ct. 430, 58 L.Ed.2d 401. Thus the legitimacy of a defendant's privacy expectations in the searched premises will not always turn upon whether his name appears on the deed, lease or certificate of registration. Surely, a husband's expectation of privacy while in an automobile titled to his spouse is as legitimate as that of the wife. This is not to say that other factors, not present in this case, such as divorce or separation, would not affect the legitimacy of a husband or wife's privacy interest in property owned by his or her spouse. We hold only that under the facts of this case, appellant Pollard had a legitimate expectation of privacy in his wife's automobile such that any unreasonable search and seizure of the vehicle would amount to an infringement of his Fourth Amendment rights.

The question remaining then is whether the police officer's actions in impounding the vehicle and conducting a limited search prior to the arrival of the warrant was reasonable under the Fourth Amendment. We think that under the facts and circumstances as presented to the officers, their actions were reasonable. When the police located the automobile, less than twelve hours had passed since the time of the double homicide and kidnapping. Based on the information supplied by witness Briscoe police knew the identity of the four assailants and had a detailed description of the vehicle. The color, model, year and condition of the automobile observed by police matched the description of the vehicle given by Briscoe. The registration check disclosed that the vehicle was owned by Willie Pollard. The Police thus had probable cause to suspect that this vehicle was the one used in the commission of the offenses. Also, at the time the auto was located, two of the four assailants were still at large; including appellant Pollard. Inclement weather conditions also made it prudent for the officers to impound the vehicle. Under such exigent circumstances, an immediate on-the-spot search of the vehicle would have been reasonable. *Gaddis v. State,* (1977) Ind., 368 N.E.2d 244, 248. The fact that police impounded the car and began searching it at the garage was simply a "logical continuation of investigative procedure that was lawful in its inception." *Whitten v. State,* (1975) 263 Ind. 407, 411, 333 N.E.2d 86, 90. *See also, United States v. Robinson,* (1976) 174 U.S.App.D.C. 351, 533 F.2d 578, *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362.

Therefore, the motion to suppress was properly denied as to appellant Pollard as well.

### III.

Pollard, Brown, and Ernest Bell were originally charged in a four count indictment returned by a Vanderburgh Grand Jury. The original Count I charged appellants with murdering Ronald Russell while in the commission of a kidnapping and provided for the death penalty in effect at that time. Count IV charged them with kidnapping Russell.

Appellants filed motions for change of venue from the county based on extensive

pre-trial publicity in Vanderburgh County. The cause was then transferred to Monroe County. In response to appellant's motions to dismiss all counts, the Monroe Superior Court dismissed Count IV on its finding that kidnapping was a lesser included offense of Count I. Count I was later dismissed when the death penalty provision was declared unconstitutional. The State subsequently requested permission to refile both counts. After oral argument on the defendant's objections to refiling, the court ordered the Counts to be refiled on the day before trial. An information was then filed charging appellants with the premeditated murder of Ronald Russell along with an information charging them with kidnapping Russell. Appellants moved to dismiss the two new counts, which motion was denied.

▪ Appellants first argue that the denial of the motion to dismiss violated their statutory right under Ind. Code § 35–1–25–7 (Burns 1979) which provides:

"If it shall be necessary to institute a new prosecution for the same offense after such change of venue has been taken, the defendant in such case shall elect, when so required by the court, whether such further prosecution shall be instituted in the court to which or in that from which such change was taken; and thereupon he may be recognized to appear in the court which he elects, or be committed for want of bail, detained in custody or remanded to the county from which the change was taken, as the case may require."

Appellants contend that the refiling of Counts I and IV constituted a new prosecution on those charges within the meaning of this statute and thus, the trial court erred by not affording them an opportunity to elect as to which county they wished to be prosecuted in. Assuming, without deciding, that appellants had a statutory right to make such an election, we fail to see how they were prejudiced by the denial of such right. If appellants had been allowed to elect, their only options would have been a choice between having the cause remain in Monroe County or having it returned to

Vanderburgh County where extensive pre-trial publicity had occurred earlier. It is also true that since the alleged new prosecution related only to Counts I and IV, the appellants, had they opted for a return to Vanderburgh County, would have been required to first defend against Counts II and III in Monroe County and then have to stand trial on Counts I and IV in Vanderburgh County; a prospect which would have been more prejudicial to appellants' rights than what actually occurred. There is thus no merit to this argument as a ground for reversal. *See State ex rel. Schaaf v. Rose*, (1943) 222 Ind. 96, 51 N.E.2d 856.

▪ Appellants next argue that Count I should have been dismissed because it charges them with killing Ronald Russell in Union County, Kentucky; outside the jurisdiction of Indiana. In reality, Count I charged appellants with the premeditated murder of Russell by means of stabbing him while in Vanderburgh County and then transporting him to Kentucky where a fatal gunshot wound was inflicted. The wording of the charge was obviously intended to show the integral relationship between the assault, abduction and murder of the victim. Thus viewed, the assault and abduction provide an adequate jurisdictional basis for appellants' conviction of murder in Indiana. *Conrad v. State*, (1974) 262 Ind. 446, 451, 317 N.E.2d 789, 792.

▪ Appellants finally argue that Count I should have been dismissed because it included averments relating to the initial stabbing and abduction in Vanderburgh County thus rendering the charge vague and uncertain. Worded differently, appellants' contention is that the drafting of Count I was so specific that they did not know what crime they were charged with. There is no merit to such an argument.

IV.

▪ Appellants objected to the trial court's preliminary instruction No. 15 which was an explanation of Count I. The instruction informed the jury that while jurisdiction to prosecute a murder case generally

lies in the state where the offense occurs, Indiana would have jurisdiction in this case if they found, beyond a reasonable doubt, that the defendants forcibly carried Russell away from Vanderburgh County as part of a continuous plan to kill him. It also instructed the jury that if they did not so find, they were required by law to find the defendants not guilty under Count I.

The trial court has the duty to preliminarily instruct the jury as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received. Ind.R.Crim.P. 8(F). While the instruction in question may have anticipated the evidence somewhat, we agree with the State that its inclusion was necessary to the jury's understanding of the charge set out in Count I and the issue of jurisdiction. There is no error here.

### V.

State's witness David Graham, the owner-manager of the Greer Motel, testified that on the morning of November 26, 1975, he received a phone call from a woman in one of the motel rooms. Mr. Graham was then asked what the woman said, at which point defense counsel objected on hearsay grounds. The trial court overruled the objection and characterized the woman's statement as being within the *res gestae* exception to the hearsay rule of exclusion. The witness went on to state that the woman asked him to call the police because she was being held hostage by men who had already killed two people. Appellants maintain that the admission of this testimony was reversible error. We disagree. The content of the objectionable statement, while corroborative of Cynthia Briscoe's testimony, added nothing of substance which was not already before the jury. Cumulative evidence, whether admitted or not, is not grounds for reversal.

### VI.

State's exhibits No. 73 and No. 74 were photographs depicting the bodies of the victims, Russell and Pettit, lying in the ditch where they were dumped. Witness Charles Thomas testified that the photos accurately portrayed the bodies of the victims but he further stated that he did not know whether or not they depicted the position or location of the bodies since he had not gone down to the ditch with Pollard and Brown. Appellants objected to the admission of the two exhibits on the ground that the State failed to lay a proper foundation. Inasmuch as the State had earlier introduced four other photographs, without objection, which were essentially identical to Exhibits 73 and 74, the error, if any, was harmless. *Crim v. State*, (1971) 257 Ind. 51, 272 N.E.2d 85; *Davis v. State* (1968) 251 Ind. 133, 239 N.E.2d 601.

### VII.

Detective Charles Miller testified that on November 26, 1975, he participated in the recovery and preservation of evidence found in the Greer Motel in Evansville. One of the items collected was a .38 caliber Colt Cobra revolver which was introduced at trial as State's Exhibit No. 79. When recovered, Officer Miller placed his initials on the butt of the gun and was later able to raise its partially obliterated serial number by use of an acid solution. Based on these identifying features, Miller identified the revolver at trial as the one he recovered from the Greer Motel. Appellants objected to the admission of the exhibit alleging an insufficient chain of custody.

The chain of custody rule applies with diminishing strictness as the exhibits concerned become decreasingly susceptible to alteration, tampering, or substitution. *Coleman v. State*, (1975) 264 Ind. 64, 339 N.E.2d 51. Although the State did not establish a complete chain of custody, we think the facts presented were sufficient to show that State's Exhibit No. 79 was the same gun that was found in the Greer Motel. The mere possibility that evidence may have been tampered with will not make it inadmissible. *Loza v. State*, (1975) 263 Ind. 124, 325 N.E.2d 173.

## VIII.

After the State had rested, the appellants requested permission to play a tape recording of testimony given by Earl Tenison, the night manager of the Greer Motel, who had testified under oath at a prior hearing but was presently unavailable. At the earlier hearing, Tenison had appeared as a State's witness and had been extensively cross-examined by defense counsel through use of leading questions. Also, much of Tenison's testimony apparently related to a chalk board diagram which was not present at trial. The State objected to the use of the tape recording on the grounds that the method of questioning used during the earlier cross-examination would be improper as a method of direct examination and that the recorded references to the chalk board could confuse and mislead the jury. The prosecutor did, however, offer to attempt to enter into a stipulation as to what Tenison's testimony had been. The defense insisted on playing the tape and the trial court sustained the State's objection thereby excluding Tenison's testimony.

The admission or exclusion of the former testimony of an unavailable witness is a matter committed to the discretion of the trial court. *Raines v. State*, (1971) 256 Ind. 404, 369 N.E.2d 378. The "former testimony" exception to the hearsay rule requires the movant to prove that the testimony given at a formal judicial proceeding: (1) was given under oath; (2) that the party against whom the former testimony is offered had an opportunity to cross-examine the witness at the former proceeding, and; (3) that the witness is presently unavailable. *Burnett v. State*, (1974) 162 Ind.App. 543, 546, 319 N.E.2d 878, 880. Here, the former testimony of Tenison was given under oath and the parties agreed that he was not presently available. However, the Court had to consider here that the testimony of the witness sought to be admitted consisted of conclusions and opinions elicited by leading questions, that locations of people and places were done by a drawing board not present at this trial; that an offer to stipulate to the material testimony of the wit-

ness was refused and defendants had not subpoenaed the witness. We therefore find that under the facts presented the trial court did not abuse its discretion by excluding the former testimony.

## IX.

Appellants next claim that the trial court erred by giving its Final Instruction No. 19, which was identical to its Preliminary Instruction No. 15 discussed in Issue IV, *supra*. This Instruction was patterned after a similar instruction which this Court approved in *Conrad v. State*, (1974) 262 Ind. 446, 317 N.E.2d 789. It was thus a correct statement of the law.

Appellants argue that the Instruction was defective in omitting any reference to the elements of purpose and premeditation. They concede, however, that all of the elements of first degree murder were adequately covered by a separate instruction. Since all of the court's instructions are to be read as a whole, there is no error here. *Sypniewski v. State*, (1977) Ind., 368 N.E.2d 1359, 1362.

## X.

Finally, appellants argue that it was error to impose separate sentences on the counts charging them with murdering Ronald Russell and kidnapping him because both offenses arose from the same operative facts. The theory and authorities relied upon by appellants were overruled in *Elmore v. State*, (1978) Ind., 382 N.E.2d 893. For purposes of double jeopardy, the crimes of kidnapping and premeditated murder are different offenses since each requires proof of facts different from and in addition to the other. Separate sentences were therefore appropriate.

The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and DeBRULER, JJ., concur.

PRENTICE, J., concurs in result.