(No. 52847.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. THOMAS J. HOLT, Appellant.

*Opinion filed June 18, 1982.—Rehearing
denied October 1, 1982.*

MORAN, J., RYAN, C.J., and UNDERWOOD, J., dissenting.

Mary Robinson, Deputy Defender, and Mark Schuster and Paul J. Glaser, Assistant Defenders, of the Office of the State Appellate Defender, of Elgin, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Herbert L. Caplan, Melbourne A. Noel, Jr., Marcia L. Friedl, Kenneth A. Fedinets, and Michael B. Weinstein, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

This is a direct appeal of a death sentence. In a bench trial in the circuit court of Lake County the defendant, Thomas J. Holt, was convicted of murder and aggravated kidnaping. The defendant alleges many errors, but one point is dispositive of the murder case. Because the murder took place in Wisconsin, Illinois has no jurisdiction over the offense. The murder charge must therefore be dismissed. We affirm the kidnaping conviction.

After an unfortunate childhood, Thomas Holt, the defendant, settled down in Kenosha, Wisconsin, with a wife and a drug problem. The victim, 19 years old, lived with her parents in Lake Forest, Illinois. On June 20, 1979, the defendant and the victim were both in a bar in Kenosha, where the victim had driven with a girl friend. Holt offered to protect her if anyone tried to hassle her as he had seen happen the week before. When the victim and her friend left, he followed them back to Lake Forest; the victim dropped the friend off and went on to her own home. He abducted her and drove back to Wisconsin with her in the car. What happened on the ride is disputed; the defendant's version is that things became

friendly for a while. Somewhere along the way, however, he raped her. In the end, he strangled her. He buried the corpse near his home in Kenosha.

The defendant was charged at first with ordinary (knowing) murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2)) as well as felony murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3)). The circuit court, however, dismissed the ordinary murder count for lack of jurisdiction, because the crime was committed in Wisconsin, there being no showing that the intent to kill was formed in Illinois. The People chose not to appeal the dismissal and have expressly waived the point in their brief. Similarly, although the defendant was charged with kidnaping aggravated by rape, he was never charged with rape itself because that probably happened in Wisconsin. This appeal is about the felony-murder counts.

A State no doubt has an interest in protecting its citizens from being forcibly taken out of State and killed or raped. Perhaps Illinois could constitutionally assert jurisdiction over such crimes. Jurisdiction, however, is not always asserted to the constitutionally permissible bounds. (*Cf. Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431 (civil long-arm jurisdiction).) Geographical jurisdiction over crimes has expanded considerably from its narrow and rigid common law limits, but usually not as far as the Federal Constitution may permit.

Jurisdiction has not been asserted over a series of crimes on the ground that the first crime of the series was committed in the forum State, even if the crimes were closely related or part of a common scheme. In *People v. Bovinett* (1979), 73 Ill. App. 3d 833, the defendant was convicted of eavesdropping in Illinois by recording telephone calls without consent, but it was held that Illinois had no jurisdiction over the count charging he used the information so obtained, since the use was in another State. Similarly, in *Conley v. United States* (4th Cir.

1928), 23 F.2d 226, the defendants stole Liberty Bonds in one State and were caught in another with the bonds, which had been altered at some point; the Federal court in the first State could try them for the theft, but not for the separate offense of altering the stolen bonds, because the defendants probably did that after leaving the first State.

Illinois jurisdiction is delimited by section 1—5 of the Criminal Code of 1961. Its pertinent parts provide:

> "(a) A person is subject to prosecution in this State *** if:
>
>> (1) The offense is committed either wholly or partly within the State; ***.
>>
>> (b) An offense is committed partly within this State, *if* either *the conduct which is an element of the offense,* or the result which is such an element, *occurs within the State.* In homicide, the 'result' is either the physical contact which causes death, or the death itself; and if the body of a homicide victim is found within the State, the death is presumed to have occurred within the State." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1—5.)

Thus, it is not enough that some part of a course of criminal conduct, some related crime, be committed in Illinois; the particular crime charged must be committed partly within this State. That is why under Illinois law Illinois cannot try Holt for rape or ordinary murder. He committed those crimes entirely in Wisconsin, though following a kidnaping that began in Illinois.

The People argue the felony-murder count is special in that one of the elements of the offense, the felony, namely the kidnaping, began in Illinois. We conclude, however, that the bare felony is not enough to confer jurisdiction on Illinois.

The felony in itself is no part of the gravamen of the offense of murder. The requirement is not simply that there was a forcible felony which preceded the murder, but that *in performing the homicidal acts*, the defendant was committing or attempting a forcible felony. (Ill. Rev. Stat. 1979,

ch. 38, par. 9—1(a)(3).) If, for example, a kidnaper and his victim fall in love and turn the kidnaping into an elopement, and in a marital spat that evening he accidentally kills her, it is not felony murder, although the chain of events began with a felony. What makes the present case felony murder is not that a kidnaping occurred once, in Illinois prior to the murder, but that there was an ongoing kidnaping at the time he killed her—in Wisconsin. An analogy makes this clearer. At common law, an essential element of burglary was that the crime occur at night. One could not say, however, that a midnight burglary began or was "partly" committed when night fell. And Illinois could not assert jurisdiction over a Wisconsin burglary on the ground that it was night here, too, even if the burglar left Illinois for Wisconsin at night. Similarly, the felony in felony murder is essential in the sense that if there were no felony the defendant could not do anything in the course of it, but the felony is only a precondition, not an element of independent significance. The real element of felony murder is not so much the felony itself as the special status a felon has from moment to moment while committing the felony. The special status the defendant in this case had at the moment of the homicide which made the homicide felony murder was the status of a felon in Wisconsin, not in Illinois.

The felony implies malice. It provides the *mens rea* as a substitute for an actual murderous mental state. An actual intent to kill would not support Illinois jurisdiction unless the defendant did something in Illinois in furtherance of that intent. Again, murder is more than an intent and a later killing; it is a killing *with* that intent. Jurisdiction would be proper even if less than all the criminal activity took place in Illinois, provided enough did to constitute a criminal attempt. (*People v. Werblow* (1925), 241 N.Y. 55, 148 N.E. 786.) The People criticize the attempt standard as too restrictive, and there is no need to decide here exactly how much activity is enough; *something,* however, is

needed. Since an actual intent to kill arrived at in Illinois without any overt act in Illinois in furtherance of that intent would not support jurisdiction over a murder occurring in Wisconsin, neither should a bare constructive intent, implied by the felony.

A felony is action, but the point is that it is not necessarily homicidal action. It does not further a murderous intent; it is not necessarily part of the homicidal venture. It is not, therefore, automatically the kind of conduct that supports jurisdiction. Framing the charge as felony murder does not excuse the People from showing the kind of Illinois involvement necessary for murder in general. If anything, it should be more difficult to acquire jurisdiction of felony murder than intentional murder, because the defendant could hardly do anything in furtherance of a fictitious intent. The Illinois activity and the death should therefore be more directly connected than would be necessary where the defendant's early actions are tied to the death by a plan to commit murder.

A felony might support jurisdiction if there were some intrinsic relation between it and the death: if, for example, the killing were done in furtherance of the felony, or were otherwise a danger inherent in the felony, so that one could say realistically that the felony caused the death. But that is not this case. The victim here did not die of kidnaping, she died of strangulation. Kidnapings do not ordinarily end in death by strangulation. The strangling here was not a natural result of the kidnaping, but a separate and unrelated act. First he kidnaped her; then, independently, he murdered her. The kidnaping here was only incidental, and does not change the essential character or location of the murder. The kidnaping in this State was not the commission, even "partly," of the murder. It makes the prosecution easier in that it relieves the prosecutor of the need to prove the defendant's actual mental state, but an incidental felony does not confer jurisdiction over a murder on a State that

would otherwise lack it.

Regardless of how the murder charges here are framed, if the murderous assault or scheme did not begin until after the defendant reached Wisconsin, if he did nothing in Illinois in contemplation of homicide or great bodily harm, nothing that set the killing in motion, and did not engage in conduct in Illinois of the kind that caused the death, Illinois has no jurisdiction over the murder.

Not every element of an offense supports jurisdiction. Some elements, while essential in the sense of necessary, are not the essence of the crime. They are only a setting for the crime; they are neither the doing of it, nor the gist of it. For example, a felon is released from prison, moves to another State, and buys a gun. In both States it is a crime for an ex-felon to possess one. The crime did not begin when he first became a felon. The initial felony is an essential element of the offense, but we do not believe that the first State would have jurisdiction on the ground that that element was committed in that State.

Murder is not aggravated felony. Murder is homicide: killing and death. The felony in a felony murder is the occasion for the homicide and colors the way the law will view any homicide that occurs, throwing it automatically into the murder category rather than a lower grade; but it is not what murder is about. A felony as such is not a murder in progress, nor the beginning of a process of murder. A cry of "Help! Murder!" would be an exaggeration.

Section 1—5 does not declare that any element of the offense will support jurisdiction. The language is *"the conduct* which is an element of the offense, or the result which is such an element." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1—5.) The "element" phrases do not expand jurisdiction but limit it. The proper meaning is that "the conduct" is enough only if it is an element of the offense; similarly, if the offense is defined solely in terms of conduct without regard to any result, there is no jurisdiction based

on where the conduct causes harm.

If a crime is defined in terms of both conduct and result, those two are spoken of, somewhat confusingly, as the "elements" of the crime. For homicide, there are three "elements": the conduct, the physical impact that causes the death, and the death itself. At common law, and in Illinois until the Criminal Code of 1961, only the impact gave jurisdiction. Section 1—5 provides that any one of the three is good enough, thus expanding jurisdiction. Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments (Smith-Hurd 1972).

Section 1—5 speaks of *the* conduct, not just any conduct or some conduct. The committee comments, discussing homicide in particular, speak of "the conduct" as "the conduct *which puts in motion the instrument or agency of death.*" (Emphasis added.) (Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments, at 20 (Smith-Hurd 1972).) What the draftsmen had in mind was something like mailing a letter bomb from one State to another, or firing a weapon across a State line.

Again, perhaps some felonies could qualify as "the conduct" of a felony murder. If the death arose out of the felony more or less accidentally, as a natural hazard of the crime rather than as a separate murder resulting from distinct conduct, the commission of the felony might be at least a key part of "the conduct" of the murder. This kidnaping, however, cannot realistically be regarded as "the conduct" of the later strangling.

The history of the language of section 1—5 further illuminates its meaning. The section derives from Model Penal Code section 1.03. (Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments, at 20 (Smith-Hurd 1972).) It is an amalgam of two versions of that code, the tentative draft No. 5 (1956) and the proposed official draft (1962). The provision that Illinois has jurisdiction if the offense is committed wholly or partly within the State is taken from the tentative draft. That draft went on at great length to define the

meaning of "wholly" and "partly." The definitions were organized according to how the offense was defined, and the one that concerns us deals with the case of offenses defined in terms of both conduct and results. That provision codified the attempt analysis of *People v. Werblow* (1925), 241 N.Y. 55, 148 N.E. 786 (opinion by Cardozo, J.) and *People v. Buffum* (1953), 40 Cal. 2d 709, 256 P.2d 317: A State in which the result does not occur has jurisdiction based on conduct if the conduct within the State amounts to an attempt to commit the offense. (Model Penal Code tent. draft No. 5, sec. 1.03(e) (1956).) A paragraph dealing specifically with homicide reiterated the rule: A State in which neither the impact nor the death occurred has jurisdiction only if conduct within the State amounted to an attempt to commit homicide. Model Penal Code tent. draft No. 5, sec. 1.03(f).

The tentative draft was needlessly elaborate. Both the proposed official draft and the Criminal Code of 1961 condensed it. The two condensations are substantially identical; the only difference is that the Illinois version retains the "wholly or partly" language from the tentative draft and then clarifies the meaning of "partly," while the proposed official draft bases jurisdiction directly on what in Illinois is the definition of "partly."

Neither the commentary to the proposed official draft of the Model Penal Code nor the committee comments on the Criminal Code of 1961 (Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments (Smith-Hurd 1972)) indicate the draftsmen intended to change the tentative draft substantively in this regard. The idea was only to simplify it and delete the obvious. Thus, the *Werblow* attempt analysis must have been regarded with approval. It is not fixed in statutory language, and as we said before, we do not decide whether some modification would be appropriate. We do think, however, that its position in the history of section 1—5 supports our conclusion that at least some significant part

of "the conduct" of a crime, that is some progress toward the completed offense, or at least some danger of it, must occur in Illinois before this State will exercise jurisdiction.

The only reviewing court precedent we have found that deals directly with the issue of jurisdiction over felony murder is *Lane v. State* (Fla. 1980), 388 So. 2d 1022. The opinion is confusing, but the decision is clear: the conviction was reversed and the cause remanded with directions to instruct the jury on retrial not to convict unless the fatal blow or the death or "an essential element of the offense *which was part of one continuous plan, design and intent* leading to the eventual death of the victim occurred in Florida." (Emphasis added.) (388 So. 2d 1022, 1029.) The case therefore supports our view that the State in which the felony began does not necessarily have jurisdiction over the felony murder.

The *Lane* opinion relied on *Conrad v. State* (1974), 262 Ind. 446, 317 N.E.2d 789, and described as "adequate" (*Lane v. State* (Fla. 1980), 388 So. 2d 1022, 1028) the following jury instruction given in *Conrad*:

> " '[I]f *** the intent to kill was arrived at and the fatal blow struck in *** Ohio and *** such intent and action originated there and after the commission of the offense of kidnapping in *** Indiana and *** the same was not part of one continuous plan, design and intent, and not the result of one continuous course of action by the defendant, but was a separate and independent set of acts occurring outside *** Indiana, then *** Indiana would have no jurisdiction ***.' " (*Conrad v. State* (1974), 262 Ind. 446, 450, 317 N.E.2d 789, 791, quoted in *Lane v. State* (Fla. 1980), 388 So. 2d 1022, 1028 n.2.)

In *Conrad*, much as in the present case, the defendant assaulted the victim, threw him in the trunk of a car, drove off, and eventually beat the victim's brains out on State Line Road, perhaps in the neighboring State; the case, however, does not seem to have been tried under a felony-murder theory. In *Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d

496, another kidnap-murder without any mention of felony murder, the Indiana Supreme Court again spoke of a "continuous plan to transport [the victim] \*\*\* to Kentucky for the purpose of killing him" (270 Ind. 599, 603, 388 N.E.2d 496, 501) and an "integral relationship between the assault, abduction and murder" (270 Ind. 599, 609, 388 N.E.2d 496, 504).

The cases the People cite are not in point. *People v. Ruzas* (1976), 54 App. Div. 2d 1083, 389 N.Y.S.2d 205, was not about where the felony murder could be tried, but about where the underlying felony could be tried. The defendants had already been convicted of the murder, in the county where they did the shooting, and the issue was whether the armed-robbery charges could have been tried there as well, so that under New York's mandatory joinder rule the failure to join all the charges barred a later prosecution for the armed robbery in the county where it occurred. The case is also distinguishable on its facts. The defendants shot a State Trooper while fleeing after the felony. Such a shooting is a common and natural ending to an armed robbery; it might well be said that there was an integral relation between the two crimes and that the felony caused the death. Finally, there was no question of jurisdiction (among States), but only of venue (choice of counties), and the court's comments on the subject were based on a New York statute which the opinion never describes.

*United States v. Busic* (2d Cir. 1978), 592 F.2d 13, did not involve felony murder at all, but the special Federal offense of aircraft piracy resulting in the death of another person, a violation of an antihijacking statute. The offense was essentially an aggravated form of aircraft piracy, and the court properly held that it fell within the Federal aircraft jurisdiction even if the death occurred on the ground. Again, the death was integrally related to the hijacking, being an inherent danger of the hijacking as the defendants carried it off rather than the result of conduct by the defendants dis-

tinct from the hijacking.

In short, no reviewing court has ever actually sustained jurisdiction over a felony murder solely on the ground that the felony occurred within the State. For the reasons discussed above, we do not think this court, in this case, should be the first.

The reason is that, in the present case, there is no evidence to support an affirmative inference that anything jurisdictionally significant happened in this State. The body was found in Wisconsin, and that is presumptively where the death occurred (cf. Ill. Rev. Stat. 1979, ch. 38, par. 1—5(b) (codifying the presumption when the body is found in this State)). The defendant's statements are the only evidence of exactly what happened, and they place everything of importance in Wisconsin. The general circumstances of the crime support the view that Holt did the killing in Wisconsin on the spur of the moment, perhaps unintentionally, while drugged and drunk—perhaps when a crazy hope to turn the kidnaping into a romance failed. There is no reason to believe that the murder happened in Illinois and the prosecution does not contend it did; nor is there any evidence that the defendant ever considered it or did anything vaguely murderous while in this State. The probability that the rape and murder happened in Wisconsin is the likely reason why the People abandoned their ordinary-murder charge and never charged rape. The most that can be said for the possibility that something jurisdictionally adequate happened in Illinois is that the evidence does not conclusively rule it out.

Jurisdiction must be proved beyond a reasonable doubt (*People v. Pride* (1959), 16 Ill. 2d 82; *People v. Strook* (1932), 347 Ill. 460; *People v. Massarella* (1979), 80 Ill. App. 3d 552), at least if no presumption arises from the finding of the body in Illinois. The evidence of Illinois jurisdiction over the present murder is insufficient. The portions of the judgment convicting the defendant of murder and sentencing

him to death are therefore reversed, and the murder charges are dismissed for lack of jurisdiction.

The defendant's challenge to his kidnaping conviction is not prominent in his brief, and only two points deserve comment.

Holt claims that certain items of the victim's clothing and personal effects were found in an illegal search and should have been suppressed. However, his "claim to privacy from government intrusion is [not] reasonable in light of all the surrounding circumstances" (*Rakas v. Illinois* (1978), 439 U.S. 128, 152, 58 L. Ed. 2d 387, 406, 99 S. Ct. 421, 435). The evidence was found underneath an open porch, by an assistant district attorney who was on the scene to advise the police searching the defendant's apartment upstairs. After sitting on the porch for a while, trying to keep out of the way, she got bored and starting walking around. She first observed the evidence while standing in a neighbor's yard. While she may have been alert, in a passive sort of way, for anything she might see, and although after seeing something that looked like the victim's clothes she did go under the porch to look more closely, we think the "search" was not substantially more intrusive than might be expected of neighborhood children and animals. The defendant had no reasonable expectation of privacy in the unsecured common area in which the evidence was more or less inadvertently found.

In a handwritten letter to the judge before trial, the defendant asked that his public defender be replaced by private counsel, explaining only that he felt the public defender did not have his best interests at heart and that he and the public defender could not get together and prepare a proper case. He now complains that the judge did not pursue the matter. While it would have been better practice for the judge to investigate, his failure to do so was not reversible error in this case. Holt never made any specific accusations or gave any particulars suggesting the attorney was in fact

not representing him properly. His dissatisfaction seems to have been only a general distrust of the public defender, and perhaps a natural reaction to being told he did not have much of a defense. Even now, with the benefit of hindsight, he does not suggest any way in which the attorney was inadequate.

The defendant received a fair trial, and the evidence against him was overwhelming. The conviction for kidnaping in its various forms must be affirmed. The judgment of conviction and sentence for murder are vacated. As it appears that no separate sentence for kidnaping was entered, the cause is remanded to the circuit court of Lake County for sentencing on the kidnaping counts.

*Affirmed in part and vacated in part; cause remanded, with directions.*

JUSTICE MORAN, dissenting:

The majority initially indicates that Illinois could "perhaps" constitutionally assert jurisdiction over an offense in which the victim is abducted in this State and subsequently murdered in another State. It declines to do so, however, and, for authority, cites two cases in which the courts would not assume jurisdiction over a series of crimes where only the first offense occurred in the forum State. (See *Conley v. United States* (4th Cir. 1928), 23 F.2d 226; *People v. Bovinett* (1979), 73 Ill. App. 3d 833.) I do not find these cases analogous to the instant circumstances.

Both *Conley* and *Bovinett* involve the commission of a series of *separate* crimes. For example, the defendant in *Conley* was charged with stealing Liberty Bonds and with altering the stolen bonds, which are two distinct offenses. The court held that the State in which the bonds were stolen had no jurisdiction over the "alteration" charge because that offense was committed in another State. Similarly, in *Bovinett*, the defendant was charged with eavesdropping and with using the information thereby obtained. These were separate offenses, and since defendant used the infor-

mation in another State, it was held that Illinois lacked jurisdiction over that count. In effect, the courts concluded that just because one offense occurs in the forum State does not mean that court has jurisdiction over other related offenses.

Here, we are not dealing with separate, related offenses. We are dealing with separate elements of the same offense. Felony murder is codified as a single offense, the essential composites of which are (1) a murder that (2) occurs during the commission of a forcible felony other than voluntary manslaughter. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3).) The majority recognizes the felony component of the offense, but concludes, without citing any authority, that it is "only a precondition, not an element of independent significance." (91 Ill. 2d at 485.) I disagree. The felony is more than a condition of the offense; it is an essential element thereof, without which a defendant could not be convicted of the crime. Simply stated, without a felony, there can be no felony murder. See *People v. Kolep* (1963), 29 Ill. 2d 116, 120-21; *cf. People v. Viser* (1975), 62 Ill. 2d 568, 581 (without a death, there can be no felony murder).

Where an element of the offense occurs within the forum State, that State may constitutionally assume jurisdiction over the offense. (*Lane v. State* (Fla. 1980), 388 So. 2d 1022 (where a crime is committed partly in one State and partly in another, defendant may be tried in either State); *State v. Harrington* (1969), 128 Vt. 242, 260 A.2d 692 (same principle); *cf. Leonard v. United States* (5th Cir. 1974), 500 F.2d 673 (where an element of the crime occurs on Federal land, the Federal court has jurisdiction even though the "gist" of the offense occurs elsewhere); *Simpson v. United States* (9th Cir. 1916), 229 F. 940, *cert. denied* (1916), 241 U.S. 668, 60 L. Ed. 1229, 36 S. Ct. 552 (defendant, charged with the offense of issuing a false certificate of deposit, is amenable to prosecution in the State in which the certificate is signed in blank, although it is unlawfully filled in in another State).) "A sovereign has jurisdiction to try an offense

where only a part of that offense has been committed within its boundaries." (*Leonard v. United States* (5th Cir. 1974), 500 F.2d 673, 674.) Here, the aggravated kidnaping, a felony, commenced in Illinois and continued into Wisconsin. This is sufficient to confer jurisdiction over the felony-murder offense. See Ill. Rev. Stat. 1979, ch. 38, pars. 1—5(a)(1), (b); *People v. Perry* (1961), 23 Ill. 2d 147, *cert. denied* (1962), 369 U.S. 868, 8 L. Ed. 2d 86, 82 S. Ct. 1035 (Illinois has jurisdiction over conspiracy charge where overt act in furtherance thereof occurred in this State).

Further support for the view that the felony is an essential element of felony murder may be found in court decisions considering the issue of venue. Although jurisdiction and venue are clearly not based upon the same legal concepts, and I do not mean to imply that the same rules are applicable to each, nevertheless an analogy may appropriately be drawn. For example, in *State v. Zimmer* (1967), 198 Kan. 479, 426 P.2d 267, *cert. denied* (1967), 389 U.S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298, the defendant was charged with felony murder predicated on kidnaping. The evidence indicated that the victim was abducted in one county and apparently murdered in another county. At issue was whether venue over the murder offense could properly be established in the county in which the kidnaping (a felony) initiated. In concluding that it could, the court stated:

> "Appellant was charged in the information with felony murder, that is, killing while engaged in the perpetration of a felony, namely, kidnaping. The jury was instructed upon this type of murder and appellant stands convicted thereof. *Hence the kidnaping was an essential element of the murder offense.* Inasmuch as the initial abduction occurred in Shawnee county and the kidnaping was triable there, venue on the murder charge became permissible there ***." (Emphasis added.) (198 Kan. 479, 498-99, 426 P.2d 269, 283.)

See also *State v. Duvaul* (1978), 223 Kan. 718, 576 P.2d 653; *cf. State v. Smith* (1979), 92 N.M. 533, 591 P.2d 664; *People v. Powell* (1967), 67 Cal. 2d 32, 429 P.2d 137, 59

Cal. Rptr. 817.

In *Zimmer*, the court's conclusion that venue was proper where the victim was abducted rests on the premise that the felony was an essential element of the felony-murder offense. This same reasoning is applicable to the instant case. The felony element should be no less essential where the issue is which State has jurisdiction, as opposed to which county has venue. Consequently, the commission of a felony in the forum State should be sufficient to confer jurisdiction over the felony-murder offense.

Further, I do not find the analogy of the common law "midnight" burglary on point. Obviously, Illinois cannot assume jurisdiction over a Wisconsin burglary because it happens to be night time in Illinois at the time of the offense. The defendant would not have committed any element of the crime in Illinois. The relevant portion of section 1—5 authorizes Illinois to assume jurisdiction over an offense only where "the *conduct* which is an element of the offense *** occurs within the State." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1—5(b).) Committing a felony is defendant's conduct; nightfall is not. It seems that resort to an analogy such as this manifests the weakness in today's opinion.

After determining that the felony is merely a "precondition" to the offense of felony murder, the majority appears to retreat from this position and concede that the felony is an element of the crime. However, it concludes that "[n]ot every element of an offense supports jurisdiction. Some elements, while essential in the sense of necessary, are not the essence of the crime." (91 Ill. 2d at 487.) Section 1—5 does not intimate that only certain elements are sufficiently essential to sustain jurisdiction. As noted above, it requires only that the conduct which is an element of the offense occur in Illinois. (Ill. Rev. Stat. 1979, ch. 38, par. 1—5(b).) The majority has now undertaken to rewrite this requirement to provide for jurisdiction only if conduct which is the

"essence" of the offense occurs in this State. I am convinced that if this is what the legislature meant to provide, it would have, and could have easily, done so.

The majority again seeks support for its position through an analogy which is distinguishable from the instant case. In the hypothetical involving an Illinois felon buying a gun, what makes the gun purchase a crime is the person's *status* as a felon due to prior criminal conduct. What makes felony murder a crime is felonious *action*, not the perpetrator's status. If a defendant once convicted of a felony thereafter murders someone, he cannot be guilty of felony murder just because he happens to be a felon at the time of the offense.

Nor do I find persuasive the resort to the committee comments for purpose of divining the legislative intent. One quoted comment states that the applicable "conduct" is that "which puts in motion the instrument or agency of death." (Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments, at 20 (Smith-Hurd 1972).) The majority goes on to note that kidnaping "cannot realistically be regarded as 'the conduct' of the later strangling." (91 Ill. 2d at 488.) I agree, but this observation is not responsive to the issue. The committee comment referred in particular to the offense of homicide. The issue in this case is not jurisdiction over a homicide; it is jurisdiction over felony murder. Here, kidnaping is the felonious conduct of the felony-murder offense.

In addition, I feel that application of the *Werblow* attempt analysis to felony murder is inappropriate. An attempt requires an intent to commit the particular offense. (Ill. Rev. Stat. 1979, ch. 38, par. 8—1.) The whole point of felony murder is that the death may be unintentional, and "[t]here is no such criminal offense as an attempt to achieve an unintended result." (*People v. Viser* (1975), 62 Ill. 2d 568, 581.) Today's opinion indicates that it may be sufficient if there is "at least some danger" that the offense will be completed. (91 Ill. 2d at 490.) It seems to me that felony murder

is a codified offense precisely because there is the danger that death will result during the commission of a forcible felony. This is all too true of kidnapings, which, with unfortunate frequency, culminate in the victims' deaths.

*Lane v. State* (Fla. 1980), 388 So. 2d 1022, is cited for the proposition that the State in which the felony began does not necessarily acquire jurisdiction over a felony-murder charge. I believe that this is a complete misinterpretation of the *Lane* decision, and it is therefore necessary to set forth in detail the facts and legal principles involved in the case. The defendant in *Lane* was charged in the alternative with first degree (premeditated) murder and felony murder, predicated on robbery or attempted robbery. The evidence adduced at trial indicated that defendant robbed and beat the victim in Florida. He then placed him in the trunk of his car and drove to a bridge in Alabama, where he again beat him and left the body. A toxicologist who performed the autopsy testified that the victim died in Alabama. Thus, the issue was whether Florida could assume jurisdiction over an offense commenced in that State but concluded in another State.

The court determined that Florida could properly assert jurisdiction over the offense if an essential element of the crime occurred within the State. It went on to explain that "[i]n the instant case that would mean establishing *either* that the premeditation to murder the victim was formulated in the State of Florida *or that the underlying felony,* in this case the robbery, *occurred in the State of Florida*." (Emphasis added.) (388 So. 2d 1022, 1028.) Again, in referring to the offense with which defendant was charged, the court stated:

> "One of the essential elements of this offense is the premeditated design of the [defendant] to effect the death of the victim or, in the alternative, the perpetration of or an attempt to perpetrate a robbery upon the victim. It is our view that if either of these alternative essential elements of the offense occurred within the State of Florida, then

Florida has jurisdiction to try the [defendant]." 388 So. 2d 1022, 1028.

The principle which the court has thus articulated is clear: If the underlying felony occurred in the forum State, that State has jurisdiction over the felony-murder charge. This follows from the court's determination, with which I agree, that the felony is an essential element of the offense.

In the instant case the majority has completely ignored the above quotations and focused solely on the holding that, on retrial, defendant should not be convicted unless the fatal blow or the death or "an essential element of the offense which was part of one continuous plan, design and intent leading to the eventual death of the victim occurred in Florida." (388 So. 2d 1022, 1029.) However, as the *Lane* court subsequently indicated, these jurisdictional guidelines were to be applied at defendant's retrial for first-degree murder. (388 So. 2d 1022, 1029.) Indeed, the contention upon which defendant appealed to the Florida Supreme Court was framed as follows: "The [defendant] contends that the State of Florida has no jurisdiction to charge or try [him] with *first-degree murder* because neither the death occurred in the State of Florida nor was it established that the fatal blows were struck in the State of Florida." (Emphasis added.) (388 So. 2d 1022, 1026.) It is therefore apparent that defendant did not challenge the State's authority to prosecute him for felony murder and the above-quoted jury instruction did not apply to that offense. Hence, the only principle enunciated with regard to felony murder indicates that the State in which the felony occurs may assume jurisdiction over the offense of murder.

*Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496, and *Conrad v. State* (1974), 262 Ind. 446, 317 N.E.2d 789, cases involving a kidnap and murder, are also cited for the proposition that the offenses must form one continuous plan in order for a State to obtain jurisdiction over an out-of-State murder. However, these cases apparently did not involve felony murder. The issue was jurisdiction over a *mur-*

*der* charge, and thus the offenses had to somehow form a continuous plan in order to sustain jurisdiction. Otherwise, no element of the murder offense could have occurred in the forum State.

Finally, the majority concludes that "there is no evidence to support an affirmative inference that anything jurisdictionally significant happened in this State." (91 Ill. 2d at 492.) This statement is simply not true. The evidence indicates that defendant abducted the victim in Illinois. Whatever other crimes were perpetrated in Wisconsin, the aggravated kidnaping commenced here. I cannot believe that the commission of such a serious felony should be considered "jurisdictionally" insignificant.

In conclusion, today's opinion treats this case as if it involved two separate offenses, so-called "ordinary" murder (a term which appears to be without legal significance) and aggravated kidnaping. Because only one offense, felony murder, is at issue, and an essential element of that offense occurred in Illinois, I believe we may properly assume jurisdiction over the complete offense. Accordingly, I would affirm the trial court's decision on the jurisdictional issue, and reach the merits of defendant's other challenges to his murder conviction.

RYAN, C.J., and UNDERWOOD, J., join in this dissent.