THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOWARD WILSON, Defendant-Appellant.

Fourth District    No. 4—93—0404

Argued January 24, 1995.—Opinion filed May 3, 1995.

Daniel D. Yuhas and Lawrence J. Essig (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1992, the State charged defendant, Howard Wilson, with three counts of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a) (now 720 ILCS 5/9—1(a) (West 1992))) and one count each of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))) and perjury (Ill. Rev. Stat. 1987, ch. 38, par. 32—2 (now 720 ILCS 5/32—2 (West 1992))). In March 1993, a jury convicted defendant of all three counts of first degree murder and the perjury allegation. In April 1993, the trial court sentenced defendant to three concurrent terms of natural life in prison for the first degree murder counts and a concurrent term of five years in prison on the perjury conviction.

Defendant appeals, arguing that (1) the trial court erred in denying his motion to dismiss for violation of section 103—5 of the Code of Criminal Procedure of 1963 (Procedural Code) (Ill. Rev. Stat. 1991, ch. 38, par. 103—5 (now 725 ILCS 5/103—5 (West 1992))), commonly referred to as the speedy trial statute, (2) the trial court erred in denying his motion to dismiss based upon two purported immunity agreements, (3) the trial court erred in denying his motion for a change of venue, (4) the trial court erred in denying his motion to

recuse the prosecutors, (5) the State exercised a peremptory challenge in a racially discriminatory manner, (6) the trial court erred in granting four of the State's motions *in limine*, and (7) the State failed to prove him guilty of first degree murder beyond a reasonable doubt.

We affirm.

## I. BACKGROUND

The charges against defendant arose out of the October 1988 robbery and murders of three individuals at the S&S Liquor store in Bloomington, Illinois. During the S&S Liquor store murders, two men entered, robbed the store, and killed three individuals inside. Those two men, Glenn Wilson and Alvin Alexander, are defendant's half-brothers. The State's theory of the case was that defendant participated in the preparation of the robbery, perhaps drove a getaway car, and may have acted as a lookout at the scene. During trial, the State presented dozens of witnesses, stipulations, and exhibits, and the defense called 12 additional witnesses, including defendant. Before trial, the court dismissed the armed robbery count on statute of limitations grounds, and the jury returned guilty verdicts on the three counts of first degree murder and one count of perjury.

## II. ANALYSIS

### A. *Speedy Trial*

The material in this section is not to be published pursuant to Supreme Court Rule 23. Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994.

### B. *The Purported Immunity Agreements*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### C. *Change of Venue*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### D. *Defendant's Motion to Recuse the Prosecutors*

Defendant next argues that the trial court erred in denying his motion for recusal of the prosecutors. We disagree.

Prior to trial, defendant filed a motion requesting that the trial court prohibit the State's Attorney and assistant State's Attorney from trying the case. Defendant argued that because the two prosecutors had several conversations with him during the course of the investigation of this case, he planned to call them as witnesses. In turn, calling them as witnesses in a case they were trying would cre-

ate prejudice and violate the advocate-witness rule. Thus, he sought to prohibit them from being advocates in the case.

As evidenced by the two immunity arrangements, defendant was not considered a suspect in the case during its initial investigatory stages when the State's Attorney and the assistant State's Attorney met with defendant several times. Also, defendant contacted the State's Attorney twice on the telephone during this period. These contacts underlay defendant's claim that he planned to call the State's Attorney and assistant State's Attorney as witnesses. The State responds that at each of the meetings between the prosecutors and defendant, one or more other individuals were also present. Indeed, both parties intended to examine these individuals during trial.

Although a prosecuting attorney is generally competent to be a witness, the advocate-witness rule precludes an attorney from acting as an advocate and a witness in the same case. (*People v. Gully* (1993), 243 Ill. App. 3d 853, 859, 611 N.E.2d 1374, 1378.) However, this rule is not absolute. A prosecuting attorney may testify in a criminal case in which he is engaged if that testimony is necessary (*Gully*, 243 Ill. App. 3d at 859, 611 N.E.2d at 1378), and the determination of whether the testimony is necessary rests within the sound discretion of the trial court. Thus, "the trial court has wide discretion in refusing to permit attorneys to testify at a trial wherein they also serve as advocates." (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, 841.) The trial court does not abuse its discretion in refusing to permit an attorney to testify where the testimony of the prosecuting attorney is not necessary for the presentation of a defense. (*People v. Rosenberger* (1984), 125 Ill. App. 3d 749, 765, 466 N.E.2d 608, 619.) "This is especially so where, as here, another witness was available to testify." *King*, 66 Ill. 2d at 559, 363 N.E.2d at 841.

When the defendant in a criminal case subpoenas the prosecutor, the trial court should conduct a hearing to determine whether it will permit those subpoenas to stand. (*People v. Palacio* (1993), 240 Ill. App. 3d 1078, 1096, 607 N.E.2d 1375, 1386.) In this case, the trial court properly conducted such a hearing, finding as follows:

> "I know of no special circumstances here which would suggest the need for [the State's Attorney or assistant State's Attorney] to testify. It seems to me the defendant must at least make a plausible showing that the testimony *** sought is material and favorable to the defense ***. In this case, in every discussion with the defendant there are other witnesses, and in most cases at least two other witnesses, where [the State's Attorney] was present. The only time there was a discussion between the two of

them that was not witnessed by someone else was where the defendant called [the State's Attorney] on the phone ***. But it appears to me that it is inappropriate to call, to allow the defendant to call [the State's Attorney] as a witness.

Second, with regard to [the assistant State's Attorney], it seems to me the only thing that relates to is whether or not that first agreement *** was a grant of immunity or an assurance that [defendant] was not the target or suspect of an investigation, and the grand jury wouldn't issue *** an indictment against the defendant. And that is clearly collateral to the issue in the case. The issue in the case is whether or not the defendant committed the crimes and whether or not the State can prove the allegations that he committed the crimes as charged beyond a reasonable doubt. It has nothing to do with the issue of immunity ***."

■ Thus, the trial court found that defendant had alternate means available to explore his meetings and conversations with the State's Attorney and assistant State's Attorney. In doing so, it concluded that the testimony of the State's Attorney and assistant State's Attorney would merely be cumulative to the testimony of the other witnesses to those conversations. The decision whether to exclude cumulative or repetitive testimony rests within the sound discretion of the trial court, and this court will not interfere with the trial court's exercise of its discretion absent a showing of abuse prejudicial to defendant. (*People v. White* (1993), 257 Ill. App. 3d 405, 413, 628 N.E.2d 1102, 1108.) Defendant has failed to demonstrate any prejudice resulting from the trial court's decision, and we hold that the trial court did not abuse its discretion.

We also note that there clearly were no third-party witnesses to defendant's two telephone calls to the State's Attorney. Nonetheless, we conclude that the trial court did not abuse its discretion by refusing to permit defendant to call the State's Attorney to testify about that conversation. In *United States v. Johnston* (7th Cir. 1982), 690 F.2d 638, 646, the court addressed a situation where a defendant telephoned the prosecuting attorney in his case. The court noted that under such circumstances, it was the defendant who placed the telephone call and therefore chose the means of communication and contact. The same observation applies here. When defendant telephoned the State's Attorney, he precluded having a third-party witness to that conversation. Thus, defendant waived any objection regarding the lack of a witness to that communication.

### E. *The Batson Challenge*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

## F. *The State's Motions In Limine*

### 1. Excluding Testimony of Three Occurrence Witnesses

Defendant next argues that the trial court erred in granting the State's motion *in limine* precluding him from introducing evidence or arguing that a person other than he or his brothers was involved in the commission of this offense. In an offer of proof, defendant indicated that he would introduce the testimony of three individuals who saw another person around the S&S Liquor store at about the time of the murders. He claims that the testimony of these witnesses "constituted evidence that precluded the defendant's involvement" in this offense. Defendant contends that the court's granting of the motion *in limine* regarding these three witnesses denied him the right to show that someone other than he was responsible for committing this offense.

A defendant may attempt to prove that someone else committed the crime for which he is charged, but that right is not without limitation. (*People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161.) Such evidence is admissible only if a close connection can be demonstrated between the third person and the commission of the offense. (*People v. Maberry* (1990), 193 Ill. App. 3d 250, 263, 549 N.E.2d 974, 982.) Evidentiary rulings of this sort rest within the sound discretion of the trial court. As a result, this court will not reverse the trial court's decision regarding whether a close connection exists absent a clear abuse of discretion. *People v. Kidd* (1992), 147 Ill. 2d 510, 535, 591 N.E.2d 431, 442; *Maberry*, 193 Ill. App. 3d at 263, 549 N.E.2d at 982-83.

■ Defendant complains that the evidence he sought to introduce in this case would have been offered to show that another individual, and not he, was guilty as charged in this case. In considering this issue, the trial court specifically found that defendant failed to sufficiently establish "a close connection *** between the third person and the commission of the offense." (See *Maberry*, 193 Ill. App. 3d at 263, 549 N.E.2d at 982-83.) Based upon this record, we hold that the trial court did not abuse its discretion in so ruling. See *Enis*, 139 Ill. 2d at 281, 564 N.E.2d at 1161.

### 2. State's Oral Motion *In Limine* Restricting Testimony Regarding Margaret Wilson

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### 3. Admission of the Nontestifying Codefendant's Hearsay Statements

Before trial, the State filed a motion *in limine* pertaining to the admissibility of statements made by codefendants Glenn Wilson (Glenn) and Alvin Alexander to several other witnesses. Neither Glenn nor Alexander was available to testify at trial. The trial court ultimately ruled that these third parties would be permitted to testify about the statements Glenn and Alexander made to them. Defendant claims that the trial court erred by so ruling and that this ruling violated his sixth amendment right to confront the witnesses against him.

The statements at issue are as follows. In June 1989, about eight months after the armed robbery and murders in this case, Glenn was in jail on an unrelated charge and allegedly told four people about these crimes. Glenn said that he was with three people whom he named (Glenn did not name defendant, but later stated the names he gave were aliases), and those three men went into a liquor store with guns. He knew a robbery was going to occur, and he was supposed to meet the men there and receive $500 for serving as a lookout.

Glenn's second statement was allegedly made in 1990 to two other people while Glenn was a prison inmate. In that statement, Glenn said that he was using cocaine with some people and they committed a robbery in Bloomington, killing some people. He further explained that they went into a liquor store, he had a gun, and a lady was pistol-whipped. As the State points out, a female employee of S&S Liquor store was pistol-whipped during the robbery.

In April 1990, Alexander allegedly told two people that he and another man committed a robbery at a liquor store and killed some people during the robbery. He also said that he had struck a woman on the side of the head during the robbery. Alexander implicated Glenn in the robbery and murder but did not mention any other name.

The State argued to the trial court that all of the foregoing statements were admissible pursuant to *People v. Bowel* (1986), 111 Ill. 2d 58, 488 N.E.2d 995, under the declaration-against-penal-interest exception to the hearsay rule. The court agreed and permitted several witnesses to testify to the foregoing hearsay statements of Glenn and Alexander.

On appeal, defendant argues that the trial court erred in holding that the statements in question met the *Bowel* standards. Further, defendant cites *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, for the proposition that even if the above statements met the *Bowel* standards, the State's use of statements of nontestifying codefendants inculpating defendant violated his sixth amendment

right to confront and cross-examine the witnesses against him.

In *Bowel*, the Supreme Court of Illinois wrote the following:

"Generally an extrajudicial declaration not under oath, by the declarant, that he, and not the defendant on trial, committed the crime is inadmissible as hearsay though the declaration is against the declarant's penal interest. [Citations.] Such declarations may, however, be admitted where justice requires. [Citation.] The Supreme Court of the United States, and this court as well, have held that where there are sufficient indicia of trustworthiness of such extrajudicial statements, a declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049; *People v. Tate* (1981), 87 Ill. 2d 134, 143-44[, 429 N.E.2d 470]; *People v. Craven* (1973), 54 Ill. 2d 419, 429[, 299 N.E.2d 1].) \*\*\*

\*\*\*

\*\*\* The four factors which the [C]ourt enumerated in *Chambers v. Mississippi* (1979), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49, are to be regarded simply as indicia of trustworthiness and not as requirements of admissibility. The question to be considered in judging the admissibility of a declaration of this character is whether the declaration was made under circumstances that provide 'considerable assurance' of its reliability by objective indicia of trustworthiness." *Bowel*, 111 Ill. 2d at 66-67, 488 N.E.2d at 999-1000.

In the present case, the State argued (and the trial court found) that the hearsay statements of Glenn and Alexander were admissible under *Bowel* because they fit the declaration-against-penal-interest exception to the hearsay rule. By so ruling, the trial court found that the statements in question were made under circumstances that provided considerable assurance of their reliability by objective indicia of trustworthiness. (See *People v. Rice* (1995), 166, Ill. 2d 35, 43-45.) As the supreme court wrote in *Bowel*, that determination by the trial court rests within its sound discretion, and this court will not reverse absent a clear showing of abuse of that discretion. (*Bowel*, 111 Ill. 2d at 68, 488 N.E.2d at 1000.) Given (1) the circumstances under which Glenn and Alexander made their statements, (2) to whom they made their statements, and (3) the nature of those statements, we hold that the trial court did not abuse its discretion in admitting these statements.

We find support for this holding in the recent decision of the United States Supreme Court in *Williamson v. United States* (1994), 512 U.S. 594, 129 L. Ed. 2d 476, 114 S. Ct. 2431, which considered the admissibility of hearsay statements offered by the prosecution similarly based upon the claim that they were admissible as declara-

tions against penal interest. In *Williamson,* the Court construed Federal Rule of Evidence 804(b)(3) (see 28 U.S.C. R. 804(b)(3) (1988)), containing the Federal declaration-against-penal-interest exception, and noted that the rule "is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." (*Williamson,* 512 U.S. at 599, 129 L. Ed. 2d at 482, 114 S. Ct. at 2435.) In a concurring opinion, Justice Scalia explained the Court's holding as follows:

"A statement obviously can be self-inculpatory (in the sense of having so much of a tendency to subject one to criminal liability that a reasonable person would not make it without believing it to be true) without consisting of the confession 'I committed X element of crime Y.' Consider, for example, a declarant who stated: 'On Friday morning, I went into a gunshop and (lawfully) bought a particular type of handgun and particular type of ammunition. I then drove in my 1958 blue Edsel and parked in front of the First City Bank with the keys in the ignition and the driver's door ajar. I then went inside, robbed the bank, and shot the security guard.' Although the declarant has not confessed to any element of a crime in the first two sentences, those statements in context are obviously against his penal interest, and I have no doubt that a trial judge could properly admit them." (*Williamson,* 512 U.S. at 606, 129 L. Ed. 2d at 487, 114 S. Ct. at 2438 (Scalia, J., concurring).)

In our view, the hypothetical statement of the armed robber in Justice Scalia's concurring opinion is substantially similar to the statements of Glenn and Alexander at issue before us, and we conclude that the trial court here properly admitted them under the declaration-against-penal-interest exception to the hearsay rule. See also *Carson v. Peters* (7th Cir. 1994), 42 F.3d 384, 386-87.

Further, we reject defendant's argument that the trial court's admission of these hearsay statements violated his sixth amendment rights. We view this case as distinguishable on its facts from *Lee* and its progeny.

In *Lee,* the codefendant was arrested, read his rights, and refused to talk to the police. Only after the police told him that Lee implicated him did the codefendant give a statement to the police implicating Lee. (*Lee,* 476 U.S. at 544, 90 L. Ed. 2d at 528, 106 S. Ct. at 2064.) At Lee's bench trial, the trial court received—and expressly relied upon—the codefendant's version of events, which disputed Lee's own testimony about the circumstances leading to the killing for which Lee was on trial. (*Lee,* 476 U.S. at 538, 90 L. Ed. 2d at 524, 106 S. Ct. at 2060-61.) Lee was convicted, and because her codefen-

dant never testified, Lee appealed on the ground that the trial court's substantive use of her codefendant's confession violated her sixth amendment rights under the confrontation clause. The Supreme Court reversed, noting that the case provided "no occasion to depart from the time-honored teaching that a codefendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation." *Lee*, 476 U.S. at 546, 90 L. Ed. 2d at 530, 106 S. Ct. at 2065.

*Lee* differs significantly from the present case in that here, neither Glenn nor Alexander directly inculpated defendant. Instead, Glenn's statements inculpated himself and persons he identified only by aliases, and Alexander's statements inculpated only himself and Glenn. Those statements were nonetheless relevant to the State's case against defendant because they (1) explained the role of Glenn and Alexander (along with unnamed others) in the S&S Liquor store armed robbery and murders, and (2) indirectly corroborated the statements defendant gave to the police about his role as an accomplice because his statements referred to assisting Glenn and Alexander as they committed those crimes.

■ The statements of Glenn and Alexander did not inculpate defendant but merely explained the roles of Glenn and Alexander (and unnamed others) and some of the circumstances surrounding the crimes. Further, these statements were "genuinely self-inculpatory," a circumstance which the Supreme Court in *Williamson* went out of its way to emphasize "is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause." (*Williamson*, 512 U.S. at 605, 129 L. Ed. 2d at 486, 114 S. Ct. at 2437.) We deem the circumstances of this case far different from those about which the *Williamson* Court expressed concern when it quoted from *Lee* as follows:

> " '[T]he arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.' " *Williamson*, 512 U.S. at 601, 129 L. Ed. 2d at 483, 114 S. Ct. at 2435, quoting *Lee*, 476 U.S. at 541, 90 L. Ed. 2d at 526, 106 S. Ct. at 2062.

The statements of the codefendants at issue here neither implicated defendant nor exonerated the codefendants. Further, they were not "arrest statements" designed to shift some or all of the guilt to others. For the reasons stated, we hold that in a case (like the present one), in which the State offers hearsay testimony of an un-

available declarant under the declaration-against-penal-interest exception to the hearsay rule and that statement does not inculpate the defendant on trial, the sixth amendment analysis under *Lee* and *Williamson* does not apply. Instead, the trial court should evaluate the proffered testimony in accordance with the standards set forth in *Bowel*.

In support of his position that the trial court committed reversible error by permitting the State to present the statements of Glenn and Alexander to the jury, defendant cites the following Illinois cases (which all follow *Lee*): *People v. Duncan* (1988), 124 Ill. 2d 400, 530 N.E.2d 423; *People v. Johnson* (1987), 116 Ill. 2d 13, 506 N.E.2d 563; and *People v. Moman* (1990), 201 Ill. App. 3d 293, 558 N.E.2d 1231. We find these cases distinguishable because, in each, the codefendants' hearsay statements received in evidence inculpated the defendant.

### 4. Excluding Evidence of the Immunity Arrangements

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### G. *Sufficiency of the Evidence*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

LUND and McCULLOUGH, JJ., concur.