THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOWARD WILSON, Defendant-Appellant.

Fourth District   No. 4—03—0113

Opinion filed May 4, 2004.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Howard Wilson, appeals the trial court's second-stage dismissal of his second postconviction petition, arguing that (1) he was denied his right to conflict-free counsel in postconviction proceedings; and (2) his felony murder conviction should be reversed because the statute of limitations for the underlying felony had expired prior to the State's charging him. We affirm.

## I. BACKGROUND

In July 1992, the State charged defendant with (1) three counts of first degree murder, alleging, in pertinent part, that on or about October 27, 1988, he killed Scott Alan Burton, Robert J. Webb, and Whitney Laurel Cole, by shooting them with a handgun "while *** committing the offense of armed robbery" (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a) (now 720 ILCS 5/9—1(a) (West 1992))); (2) one count of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))); and (3) one count of perjury (Ill. Rev. Stat. 1987, ch. 38, par. 32—2 (now 720 ILCS 5/32—2 (West 1992))).

In February 1993, defendant filed a motion to dismiss the armed robbery count, alleging that the State initiated prosecution of the offense after the three-year statute of limitations had expired. In March 1993, the trial court granted defendant's motion and dismissed the armed robbery charge against defendant.

Later in March 1993, a jury convicted defendant of three counts of first degree murder (720 ILCS 5/9—1(a) (West 1992)) and one count of perjury (720 ILCS 5/32—2 (West 1992)). The trial court later sentenced him to three concurrent terms of natural life in prison on the murder

convictions and a concurrent five-year prison term on the perjury conviction. Defendant appealed, and this court affirmed his convictions and sentences. *People v. Wilson*, 271 Ill. App. 3d 943, 649 N.E.2d 1377 (1995).

In February 1994, defendant *pro se* filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 through 122—8 (West 1992)). The trial court later dismissed defendant's petition, upon finding it frivolous and patently without merit (725 ILCS 5/122—2.1 (West 1992)).

In December 1999, defendant *pro se* filed a second postconviction petition. In March 2001, the trial court appointed the public defender to represent defendant. However, in January 2002, the court allowed the public defender to withdraw as defendant's postconviction counsel due to a conflict. Later that month, the court appointed attorney William Yoder as defendant's postconviction counsel.

In November 2002, Yoder filed an amended postconviction petition on defendant's behalf. The State then filed a motion to dismiss defendant's amended postconviction petition, and following a November 27, 2002, hearing on the State's motion, the trial court took the matter under advisement. On December 2, 2002, Yoder was appointed McLean County State's Attorney. On December 6, 2002, Yoder filed a motion for appointment of a special prosecutor in defendant's case. On December 9, 2002, the court granted Yoder's motion and appointed a special prosecutor. On January 10, 2003, the court entered an order granting the State's motion to dismiss defendant's amended postconviction petition.

This appeal followed.

## II. ANALYSIS

### A. Defendant's Postconviction Representation

Defendant first argues that we should reverse the trial court's dismissal of his amended postconviction petition because he was denied his right to conflict-free counsel in the postconviction proceedings. Specifically, he contends that during those proceedings, Yoder's simultaneous representation of defendant and the State constituted a *per se* conflict of interest. We disagree.

In *People v. Graham*, 206 Ill. 2d 465, 472, 795 N.E.2d 231, 236 (2003), our supreme court addressed a criminal defendant's right to conflict-free counsel as follows:

> "A criminal defendant's sixth amendment right to effective representation includes the correlative right to conflict-free representation. [Citations.] Because a defendant is entitled to undivided loyalty from defense counsel, this court has adopted a

*per se* conflict-of-interest rule. [Citation.] Under this rule, the defendant's conviction must be reversed if (1) defense counsel has an actual or potential conflict of interest stemming from a previous or current commitment to a party with interests adverse to the defendant, and (2) the defendant does not waive the conflict. [Citations.] \*\*\*

A threshold inquiry in any conflict-of-interest case is whether, in fact, defense counsel represented or represents a party with conflicting interests to those of the defendant."

■ Defendant's conflict-of-interest claim does not survive *Graham*'s threshold requirement. When Yoder was appointed State's Attorney, his substantive work on defendant's behalf was completed and resolution of the case was in the hands of the trial court. During the time that Yoder actively performed as defendant's counsel, he was not operating under a conflict of interest. He had no "previous or current" relationship with the State that would give rise to divided loyalties.

Defendant's claim that Yoder knew he would be appointed State's Attorney before the appointment occurred is neither supported by the record nor relevant. We emphatically reject the notion that if Yoder had known he was a candidate for such an appointment, that knowledge alone would give rise to a *per se* conflict of interest. To hold that an attorney's performance prior to such an appointment is automatically tainted once such appointment occurs would be an insult to the legal profession and unduly hamper the administration of justice. See *People v. Spreitzer*, 123 Ill. 2d 1, 19-20, 525 N.E.2d 30, 37 (1988) (discussing the reverse notion—that a former prosecutor should be disqualified from working as a public defender—as follows: "Such a rule would have the undesirable effect of discouraging public defender's offices from hiring competent former prosecutors. Particularly in small counties where the entire criminal bar is itself not very large, a *per se* rule against assignment of an entire cohort of cases to a public defender who happens to employ a former prosecutor would be an administrative and financial nightmare. The defendant has not identified any interest which would justify such a rule").

## B. Felony-Murder Conviction

Defendant also argues that his felony-murder conviction should be reversed because the statute of limitations for the underlying felony (armed robbery) had expired prior to his indictment.

■ We first address the State's argument that defendant has forfeited this argument by failing to raise it in his postconviction petition. See *People v. Rials*, 345 Ill. App. 3d 636, 640, 802 N.E.2d 1240, 1244 (2003) ("A defendant may not raise for the first time on appeal

constitutional claims which were not actually presented in his petition"). Defendant concedes that he raises this argument for the first time on appeal. However, defendant contends that if he was convicted for a crime charged after the statute of limitations had run, his conviction would be void, and a void judgment may be attacked at any time. *People v. Keegan*, 334 Ill. App. 3d 1061, 1063-64, 779 N.E.2d 904, 905 (2002) ("If a court lacks subject[-]matter jurisdiction because a cause is not filed within a jurisdictional time limitation, the court's judgment may be attacked at any time as a void judgment"); see also *People v. Thompson*, 209 Ill. 2d 19, 25 (2004) (holding that a defendant's claim that a portion of his sentence was void could be raised for the first time on appeal of the first-stage dismissal of his postconviction petition). In light of this precedent, we will address defendant's argument on the merits.

■ Section 9—1 of the Criminal Code of 1961 defines felony murder as follows: "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death: *** (3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(3) (West 1992). Defendant cites no authority for his propositions that (1) conviction under section 9—1(a)(3) of the Code requires an actual conviction of the underlying felony, and (2) a statutory bar to prosecution of the underlying felony also bars a felony-murder conviction, and we have found none. Although defendant's statute of limitations argument presents a question of first impression in Illinois, Illinois courts have addressed the role of the underlying felony in felony-murder prosecutions, and those cases do not support defendant's contentions.

■ Defendant's contention that "the underlying felony is an element of the offense" of felony murder has been expressly rejected by the Illinois Appellate Court. In *People v. Edwards*, 343 Ill. App. 3d 1168, 1178-79, 799 N.E.2d 899, 907 (2003), for example, the jury received an instruction on the elements of felony murder, but no instruction on the elements of the underlying felony (robbery). The Second District Appellate Court held that no plain error occurred, noting that in felony-murder cases, proof that the underlying felony occurred is not used to establish that felony *per se*; rather, it is used to establish the requisite substitute criminal intent for felony murder. See also *People v. Johnson*, 223 Ill. App. 3d 169, 170-71, 584 N.E.2d 515, 517 (1991) (rejecting defendant's argument that his felony-murder conviction could not stand after the trial court vacated the underlying burglary conviction). In addition, in *People v. Holt*, 91 Ill. 2d 480, 440 N.E.2d 102 (1982), our supreme court, albeit in a different context, discussed the significance of the underlying felony as follows:

"[T]he felony in felony murder is essential in the sense that if there were no felony the defendant could not do anything in the course of it, but the felony is only a precondition, not an element of independent significance. The real element of felony murder is not so much the felony itself as the special status a felon has from moment to moment while committing the felony." *Holt*, 91 Ill. 2d at 485, 440 N.E.2d at 104.

Based on the foregoing authority, we conclude that (1) conviction on the underlying felony is not an element of felony murder, and (2) the statute of limitations applicable to the underlying felony is irrelevant to the charge and conviction of felony murder.

We find additional support for our conclusion in cases from other jurisdictions in which courts addressed and rejected the same argument defendant raises here. See, for example, *People v. Harvin*, 46 Misc. 2d 417, 418, 259 N.Y.S.2d 883, 885 (1965) ("[I]n a felony-murder prosecution, the fact that the underlying felony may be barred by the statute of limitations is entirely irrelevant"); *Jackson v. State*, 513 So. 2d 1093, 1094-95 (Fla. App. 1987) (rejecting the defendant's claim that he could not be held to answer a felony-murder charge if he could not be found criminally responsible for the underlying felony); *People v. Morris*, 46 Cal. 3d 1, 14, 756 P.2d 843, 850, 249 Cal. Rptr. 119, 126 (1988) ("It is well settled that the statute of limitations applicable to the underlying felony is immaterial to the charge and conviction of felony murder"); *State v. Dennison*, 54 Wash. App. 577, 579, 774 P.2d 1237, 1239 (1989) (holding that "a conviction on the underlying felony is not a jurisdictional prerequisite to prosecution for felony murder").

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and McCULLOUGH, JJ., concur.