Shawn A. Womack, Justice, dissenting.
The majority's decision today holds that the State of Arkansas cannot bring a prosecution for felony murder for a death occurring within the state simply because the predicate felony occurred elsewhere. Because I believe this decision is based on a misunderstanding of our extraterritorial jurisdiction statute, I must respectfully dissent.
I.
This case involves brutal circumstances of the crime for which a Benton County jury sentenced Mauricio Torres to death for the murder of his six-year-old son Isaiah. The events giving rise to this murder are not in dispute. Indeed, Torres provided many of the details during his confession to police. Curiously, a recitation of the facts is absent from the majority's opinion, so I begin there.
On the morning of March 29, 2015, Mauricio and Cathy Torres were camping in Missouri with their two daughters and Isaiah. They woke to discover Isaiah had eaten cake for breakfast. For the offense of eating cake without permission, Isaiah was punished by inserting a stick into his rectum and forcing him to do squats. Torres described Isaiah's punishment to police: "I'm not gonna spank him. It doesn't ever work .... I just put the stick in his bottom again, you know. Like you said, that power. And I said, in the corner, you know, up and down." When Cathy saw what was happening, she became angry with Isaiah for not squatting fast enough and pushed him down. This drove the stick deeper inside of Isaiah's body and pierced his rectum.
Isaiah's health steadily deteriorated throughout the day. When the family returned to their home in Bella Vista, Arkansas, that night, he was unresponsive. Torres did not seek medical care for Isaiah until nearly midnight. When emergency responders arrived, Isaiah was in cardiac *467 arrest. He was transported to a hospital in Benton County, Arkansas, but soon died.
The official cause of Isaiah's death was acute fecal purulent peritonitis-a bacterial infection in the abdominal cavity due to blunt force anorectal trauma. In other words, Isaiah died from the feces and pus that filled his abdomen through his punctured rectum. But a significant contributing factor to his death were the extensive injuries covering his entire body. The forensic pathologist who examined Isaiah's body described his condition as "a textbook case of chronic child abuse."
The injuries were in various stages of healing and were too numerous to count. Thick scar tissue lined the interior of Isaiah's skull cap from repeated, significant, and traumatic head injuries. Isaiah's nose had been broken, flattened, and deformed. His teeth had been forcibly removed. The injuries on his back included severe bruising, chemical burns, and multiple lacerations resembling whip marks. His hands and arms were covered in defensive wounds. And, shortly before his death, Isaiah sustained substantial and traumatic blows to his head and a blunt force injury encompassing his chest, back, and abdomen.
The apparent causes of these injuries were revealed at trial. According to his sister's testimony, Isaiah was regularly beaten with a cable and the stick that caused his death. He had been hospitalized the year before his death for chemical burns after being forced to bathe with bleach. Torres had removed Isaiah's teeth with pliers as punishment for speaking ill of him. He had forced Isaiah to consume his feces and urine. Moreover, Isaiah's blood was found spattered throughout the Bella Vista home and the Missouri camper.
The State of Arkansas charged Torres with capital murder premised on two alternate theories. The first theory was capital felony murder predicated on rape and the second theory was premised on child abuse. He was also charged with first-degree battery. The jury unanimously convicted Torres of first-degree battery and capital murder by a general verdict form. Torres was subsequently sentenced to death.
II.
Criminal jurisdiction at common law permitted a state to prosecute only those crimes committed within its territorial borders. See Comment, Jurisdiction Over Interstate Felony Murder , 50 U. Chi. L. Rev. 1431, 1433 (1984). Like most states however, Arkansas has broadened the territorial scope of its jurisdiction to permit prosecution of crimes committed in different jurisdictions if the alleged conduct or some consequence of it occurs within its borders. See 1 Wayne R. LaFave, Substantive Criminal Law § 4.4(b) (3d ed. 2018). These laws are generally "premised on the belief that a state should have jurisdiction over those whose conduct affects persons in the state or an interest of the state, provided that it is not unjust under the circumstances to subject the defendant to the laws of the state." Model Penal Code § 1.03 cmt. 1, p. 35 (1962).
The jurisdictional bases within Arkansas's extraterritorial jurisdiction statute were adopted from the Model Penal Code. See Ark. Code Ann. § 5-1-104 ; Model Penal Code § 1.03 (1962). These bases incorporate a more expansive interpretation of territorial jurisdiction than existed at common law, yet still require a direct link to Arkansas. As relevant here, "[a] person may be convicted under a law of this state ... if [e]ither the conduct or a result that is an element of the offense occurs within this state." Ark. Code Ann. § 5-1-104(a)(1) (Repl. 2013). "When the offense is homicide, either the death of the victim or the *468 physical contact causing death constitutes a 'result[.]' " Ark. Code Ann. § 5-1-104(b).
The "offense" at issue here is capital felony murder. Capital felony murder occurs when a person, acting alone or with others, commits or attempts to commit one of eleven enumerated felonies (including rape) and "[i]n the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of a person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-101(a) (Repl. 2013). In other words, the elements of capital felony murder include (1) the attempt or commission of an underlying felony, and (2) the resulting death of a person.
The plain language of these provisions clearly establishes Arkansas's jurisdiction to convict Torres of felony murder. Isaiah's death is a requisite element of the felony murder statute. Likewise, his in-state death is a "result" for purposes of jurisdiction. See Ark. Code Ann. § 5-1-104(b). Moreover, this Court has long held that "if the requisite elements of the crime are committed in different jurisdictions, any state in which an essential part of the crime is committed may take jurisdiction." Gardner v. State , 263 Ark. 739, 748, 569 S.W.2d 74, 78 (1978). An essential part of the crime, Isaiah's death, has clearly occurred in Arkansas. Under both our precedent and the controlling statute, jurisdiction clearly lies in this state.
The majority's analysis turns on its flawed assertion that the "offense" at issue is rape. But Torres was not convicted of rape. Rather, he was convicted of capital felony murder predicated on rape. To be sure, the prosecution must prove the underlying felony to sustain a felony murder conviction. See Flowers v. State , 342 Ark. 45, 49, 25 S.W.3d 422, 425 (2000). Proof of the underlying felony is an essential element because it functions as the mens rea for the murder. See Perry v. State , 371 Ark. 170, 177, 264 S.W.3d 498, 503 (2007). In order to establish jurisdiction, the underlying felony is significant for that reason alone.
The State of New York, analyzing similar felony murder and jurisdiction statutes, held it could prosecute for felony murder of an in-state death resulting from a felony committed in Connecticut. People v. Stokes , 88 N.Y.2d 618, 648 N.Y.S.2d 863, 671 N.E.2d 1260 (1996). It held that because death is an element of felony murder, the in-state death provided a basis for jurisdiction. Id. , 648 N.Y.S.2d 863, 671 N.E.2d at 1263-64. "For purposes of jurisdiction, the [felony] is significant only in the context of the felony murder charged, not as a separate crime .... The underlying felony is not so much an element of the crime but instead functions as a replacement for the mens rea. " Id. (internal citation omitted); see also People v. Polk , 118 A.D.3d 564, 567, 988 N.Y.S.2d 172 (N.Y. Ct. App. 2014) (upholding felony murder conviction where state was without jurisdiction to prosecute underlying felony).
Similarly, the Illinois Supreme Court determined that a conviction on the underlying felony is not an element of felony murder. See People v. Holt , 91 Ill.2d 480, 64 Ill.Dec. 550, 440 N.E.2d 102, 104-105 (1982). That court held that "the felony in felony murder is essential in the sense that if there were no felony the defendant could not do anything in the course of it, but the felony is only a precondition, not an element of independent significance. The real element of felony murder is not so much the felony itself as the special status a felon has from moment to moment while committing the felony." Id. ; see also People v. Wilson , 348 Ill.App.3d 360, 283 Ill.Dec. 881, 808 N.E.2d 1169, 1173 (2004).
*469 The plain language of our extraterritorial jurisdiction statute makes clear that Arkansas has jurisdiction to convict Torres of felony murder for the Arkansas death of his son, Isaiah, predicated on the Missouri rape. We should affirm the conviction.
For the foregoing reasons, I respectfully dissent.
Kemp, C.J., and Wood, J., join.