*621
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 At issue in these related appeals is the novel question whether New York has jurisdiction to prosecute a defendant for felony murder when the homicide takes place here but the underlying felony is committed in a neighboring State. We answer that question in the affirmative.
 

 In the early afternoon of May 18, 1990, Detective Joseph Gavin of the Greenwich, Connecticut, Police Department, on surveillance duty in an unmarked car at a local Getty Mart convenience store, saw an older model Chevrolet pull into the lot and park at the farthest point from the building and the gas pumps. He watched as defendant Orlando Nieves and a woman, Evelyn Smith, left the car and walked quickly into the store after which the driver, defendant John Stokes, began to back out. Once inside the store, as the evidence showed, Nieves went around the counter, held a knife to the cashier’s stomach and demanded that he open the cash register. Smith took about $100 and five to ten cartons of cigarettes, placing them in a plastic bag.
 

 The detective saw Nieves and Smith run from the store into the waiting car. Stokes then sped out of the exit with Gavin in pursuit, his lights and siren activated. Gavin radioed police headquarters and another patrol car stationed at Exit 5 on the New England Thru way (Interstate 1-95) for assistance with a possible robbery. As he followed the Chevrolet, Gavin saw the patrol car pull out to block the road. Stokes avoided the roadblock and drove onto the Thruway heading toward New York City. Gavin continued his pursuit as the car ahead went from lane to lane at 80 or 90 miles an hour.
 

 The chase was then joined by Captain Peter Robbins and other Greenwich police officers who attempted to box in the Chevrolet. The suspects’ car, however, evaded its pursuers and sped across the State line into New York. As Robbins approached the getaway car, his partner Sergeant James Walters pointed his revolver at Stokes. Stokes responded with an obscene gesture; Nieves ducked his head down in the back seat.
 

 When Robbins, following behind, again tried to pull alongside, the Chevrolet forced him into a breakdown lane. The chase continued through the New Rochelle toll plaza where the getaway car sped through a lane closed to traffic, sending traffic cones flying and workers fleeing for safety.
 

 
 *622
 
 With the flow of vehicles on the Interstate blocked, Stokes left the highway at Exit 11. As the Chevrolet approached the intersection of Edison and Bartow Avenues in the Bronx, it swerved left to avoid hitting a truck, crossed the intersection backwards and rammed into a glass bus shelter, where a woman waited. Walters observed that the force of the impact sent the woman into the air. The car continued for a short distance and then stopped.
 

 Greenwich Police Officer Timothy Biggs saw the woman, identified as Gladys Davis, unconscious on the sidewalk and bleeding heavily. Despite emergency first aid, the victim later died at the hospital due to skeletal fractures and bleeding caused by blunt impact.
 

 Greenwich Police Sergeant Rick Cochran saw Nieves, Stokes and Smith disperse on leaving the car. Defendant Nieves held a knife in his right hand as he ran through an adjacent parking lot. Although an off-duty police officer in pursuit had pointed his gun at Nieves and told him three times to drop the knife, he refused. Cochran then signaled his police dog who brought him down, causing him to drop the knife, and Nieves was taken into custody. One hundred four dollars was recovered from his right front pants pocket. Cochran found several cartons of cigarettes on the car floor.
 

 Stokes meanwhile had run down Edison Avenue pursued by Walters, who repeatedly identified himself as a police officer and ordered him to stop. Defendant continued to flee and kicked at the sergeant as he tried to stop him from climbing over a fence. An off-duty police officer, Mark Capalbo, who had witnessed the tail end of the chase, saw Stokes attempt to conceal himself in the back of a flatbed truck stopped in traffic. Recognizing him as the driver of the getaway car, Capalbo drew his revolver, entered the flatbed and identified himself as a police officer. With the help of Detective Hans Hansen of the Greenwich Police Department Capalbo subdued and handcuffed Stokes.
 

 Soon thereafter Nieves, in the back seat of a police car, acknowledged that he had been involved in a robbery at a gas station in Greenwich and that, earlier in the day, he had recruited Stokes to drive the getaway car. He further admitted that the knife belonged to him.
 

 Defendants were charged with, among other crimes, murder in the second degree based upon the felony murder provision of the homicide statute (Penal Law § 125.25 [3]) on an acting in
 
 *623
 
 concert theory (Penal Law § 20.00). After a jury trial Nieves was convicted of felony murder. Stokes was separately convicted by a jury of murder in the second degree (Penal Law § 125.25 [3]), unauthorized use of a vehicle in the first degree (Penal Law § 165.08), reckless endangerment in the first degree (Penal Law § 120.25) and leaving the scene of an incident without reporting (Vehicle and Traffic Law § 600 [2] [a]). On appeal, both defendants urged that the New York courts were without jurisdiction to try them for felony murder. The Appellate Division rejected their arguments, as do we.
 

 Defendants’ central contentions before us are first, that the applicable statutes provide no basis for jurisdiction here and second, that as a matter of policy New York has no valid interest in prosecuting the felony murder charges. Neither contention has merit.
 

 Statutory Framework
 

 A felony murder is committed when a person, acting alone or in concert with others, commits or attempts to commit one of nine enumerated felonies (including robbery) and "in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants” (Penal Law § 125.25 [3]). Felony murder differs from other homicides in that it does not require a
 
 mens rea
 
 directly relating to the death. Instead, "[b]y operation of law, the intent necessary to sustain a murder conviction is inferred from the intent to commit a specific, serious, felonious act, even though the defendant, in truth, may not have intended to kill.”
 
 (People v Gladman,
 
 41 NY2d 123, 125.)
 

 This Court has upheld felony murder convictions, for example, where a victim was killed by another police officer in a drug-related shootout
 
 (People v Hernandez,
 
 82 NY2d 309, 319) and where a homeowner died of a heart attack when he encountered the defendant burglarizing his home
 
 (People v Ingram,
 
 67 NY2d 897;
 
 see also, Matter of Anthony M.,
 
 63 NY2d 270). As we noted in
 
 People v Matos
 
 (83 NY2d 509), "defendant’s conduct set in motion and legally caused the death of [the police officer]. Had defendant not first committed an armed violent felony and then attempted to escape by way of the roof, the officer would not have pursued him onto the roof, thereafter plunging to his death in the airshaft”
 
 (id.,
 
 at 511).
 
 (See also, People v Slaughter,
 
 78 NY2d 485, 490-491 [elements of felony murder charge satisfied where defendants, in immediate flight
 
 *624
 
 from an attempted robbery, drove at high speed to avoid apprehension and collided with another vehicle, killing a passenger];
 
 accord, People v Falu,
 
 138 AD2d 510,
 
 lv denied
 
 71 NY2d 1026.)
 

 Had the sequence of events presented here taken place entirely in New York, plainly a prosecution for felony murder would lie. Defendants urge, however, that because the felony was committed in Connecticut, New York is without jurisdiction to prosecute for felony murder.
 

 The starting point for the State’s jurisdiction in criminal cases is of course the territorial principle derived from the common law
 
 (People v McLaughlin,
 
 80 NY2d 466, 470). The common law regarded the interests of a sovereign as both absolute within its territorial limits and circumscribed by those limits
 
 (see,
 
 Comment,
 
 Jurisdiction Over Interstate Felony Murder,
 
 50 U Chi L Rev 1431, 1433
 
 [also,
 
 n 15, citing Berge,
 
 Criminal Jurisdiction and the Territorial Principle,
 
 30 Mich L Rev 238, 238-241]). An offender could therefore be prosecuted only in the place where the offense was committed (1 LaFave and Scott, Substantive Criminal Law § 2.9 [a], at 180).
 

 This principle has been supplanted by State statutes broadening the territorial scope of criminal jurisdiction
 
 (Jurisdiction Over Interstate Felony Murder,
 
 50 U Chi L Rev, at 1436-1437). New York, for example, in former Penal Law § 1930 (1) subjected to punishment "[a] person who commits within the state any crime, in whole or part” (Penal Law of 1909 § 1930 [1] [repealed 1965]). As Judge Cardozo observed in
 
 People v Werblow
 
 (241 NY 55, 60), "[t]he statute announces a departure from the rule at common law.” Indeed, such statutes appreciably expanded on the common-law rule by permitting an exercise of jurisdiction by any State in which a significant part of the crime had been committed
 
 (see, id.,
 
 at 60-61).
 

 Although former Penal Law § 1930 enlarged the common-law rule, its terse treatment of geographical jurisdiction was seen as "unsatisfactory” and a more extensive provision was included in the proposed revision to the Criminal Procedure Law
 
 (see,
 
 Commn Staff Notes to CPL art 20, reprinted in NY Cons Law Serv, Book 7, at 107). The ultimate result, CPL 20.20, codified the principle that "for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the State”
 
 (People v McLaughlin,
 
 80 NY2d, at 471, citing CPL 20.20).
 

 
 *625
 
 Thus, CPL 20.20 provides that
 

 "a person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law when:
 

 "1. Conduct occurred within this state sufficient to establish:
 

 "(a) An element of such offense”.
 

 In turn, Penal Law § 20.00, governing accessorial conduct, states:
 

 "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.”
 

 Here the "offense” we are concerned with for purposes of section 20.20 is felony murder. The elements of felony murder are the attempt or commission of an underlying felony and the death of a nonparticipant caused "in the course of and in furtherance of such crime or of immediate flight therefrom” (Penal Law § 125.25 [3]). The death of a nonparticipant in this State, in the course and furtherance of a designated felony or immediate flight therefrom, constitutes an element of the crime of felony murder and therefore satisfies CPL 20.20 (1) (a).
 

 Defendants argue, however, that something more is required. They say that New York lacks jurisdiction because Penal Law § 125.25 (3) does not explicitly mention "out-of-state conduct” in its definition of robbery.
 

 We decline to read the statute as defendants propose. Indeed, defendants’ theory is directly contradicted by the unambiguous language of CPL 20.20, which makes the in-State occurrence of one element of the offense a sufficient basis for jurisdiction. For purposes of jurisdiction, the robbery is significant only in the context of the felony murder charged, not as a separate crime. As we made clear in
 
 People v Berzups
 
 (49 NY2d 417, 427), "the underlying felony is not so much an element of the crime but instead functions as a replacement for the
 
 mens rea
 
 or intent necessary for common-law murder.”
 

 WTien a homicide is committed in New York in immediate flight from a designated felony such as robbery, an element of
 
 *626
 
 felony murder has occurred in New York. The robbery in effect furnishes the
 
 mens rea
 
 for the homicide charge. The occurrence of a death in this State as a consequence of the immediate flight therefore falls within the relevant statutes and provides the basis for jurisdiction to prosecute for felony murder here.
 

 Policy Considerations
 

 Defendants urge that we not read the statutes to allow jurisdiction because, they argue, the State where the felony is committed is the only one with a legitimate interest in prosecution for felony murder. This argument misreads our precedents and is unpersuasive.
 

 While defendants view the felony murder statute as aimed at deterring and punishing the underlying felony — in other words, as merely a sentence-enhancing device — our precedents make clear that the statute is directed as well at deterring and punishing the homicide. Only recently we noted that the "language of Penal Law § 125.25 (3) evinces the Legislature’s desire to extend liability broadly to those who commit serious crimes in ways that endanger the lives of others”
 
 (People v Hernandez,
 
 82 NY2d 309, 318,
 
 supra).
 
 Even more to the point, we observed in
 
 People v Berzups
 
 (49 NY2d 417, 427,
 
 supra)
 
 that both the "historical development of the felony murder doctrine and the legislative policy reflected in its current statutory descendant * * * underscore the fact that the corpus of the crime is the killing of another.”
 
 *
 

 As a matter of policy, New York has an interest in deterring and punishing dangerous and destructive acts that result in a death within its borders. Because defendants entered New York with the intent to avoid apprehension for the robbery they committed, carried that intent forward by driving recklessly while in immediate flight from the crime, and in a reasonably foreseeable circumstance collided with and killed an
 
 *627
 
 innocent bystander, plainly New York has a legitimate interest in prosecuting the felony murder.
 

 Here, CPL 20.20 (1) (a) was satisfied because an element of the offense of felony murder occurred within the State. Moreover, the evidence established defendants’ violations of Penal Law § 125.25 (3): Nieves’ knifepoint robbery of the Greenwich Getty Mart, with Stokes as the getaway driver, ended in the death of a woman waiting at a bus stop. Her death was the reasonably foreseeable consequence of the defendants’ patently reckless conduct. As we noted in
 
 People v Hernandez
 
 (82 NY2d 309, 319,
 
 supra),
 
 "[i]mmediate flight and attempts to thwart apprehension are patently within the furtherance of the cofelons’ criminal objective” (citing
 
 People v Gladman,
 
 41 NY2d 123, 129). Defendants’ individual conduct amply established their willful participation in the robbery and their shared intent to avoid apprehension and retain the proceeds of the crime, consistent with the prosecution’s acting in concert theory of the case.
 

 Defendants’ remaining contentions, to the extent preserved, are without merit.
 

 Accordingly, in each case the Appellate Division order should be affirmed.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In each case: Order affirmed.
 

 *
 

 The only other State high court to have considered the question of jurisdiction to prosecute interstate felony murder — the Supreme Court of Illinois — concluded that the prosecution was proper in the State where the homicide occurred (Wisconsin) not the site of the felony (Illinois)
 
 (People v Holt,
 
 91 Ill 2d 480, 440 NE2d 102, 103-104).
 
 (See also, Lane v State,
 
 388 So 2d 1022, 1029 [Fla] ¡jurisdiction in interstate homicide case requires in-State death or essential element of plan leading to death];
 
 cf., State v Reldan,
 
 166 NJ Super 562, 400 A2d 138 [in-State commission of felony sufficient for jurisdiction over felony murder]). We do not address the question whether jurisdiction would lie where only the felony, not the death, occurred in New York.