John STOKES, Petitioner,

v.

David MILLER, Respondent.

No. 00 Civ. 0806(RMB)(AJP).

United States District Court, S.D. New York.

July 21, 2000.

John Stokes, Eastern Correctional Facility, Napanoch, NY, Pro Se.

### ORDER

BERMAN, District Judge.

In a habeas corpus petition dated August 17, 1999 ("Petition"),[1] John Stokes ("Stokes" or "Petitioner"), appearing pro se, challenges his 1992 conviction in New York State Supreme Court, Bronx County, for second degree felony murder (and re-

lated lesser charges) and his sentence of twenty-five years to life imprisonment. The Petition alleges: (1) that Petitioner should not have been convicted in New York since no element of the underlying robbery took place in New York; (2) Petitioner's unauthorized use of a vehicle conviction should not stand for the same reason; (3) Petitioner was deprived of a fair trial by the exclusion of certain exculpatory evidence; and (4) the underlying Indictment of Petitioner was defective because it incorrectly alleged that the robbery took place in the Bronx.

On May 18, 2000, U.S. Magistrate Judge Andrew J. Peck, to whom the matter had been referred, issued a Report and Recommendation (the "Report"), recommending that Mr. Stokes' Petition be denied. Judge Peck determined that the Petition was time-barred, i.e., that Petitioner failed to file his Petition within 12 months of the date his judgment (and conviction) became final, which Magistrate Peck determined was January 8, 1997, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1)-(2).[2] On July 20, 2000, Petitioner filed written objections to the Report. **For the reasons set forth below, this Court adopts the Report in its entirety.**

### I. Background

Stokes was convicted in Supreme Court, Bronx County, of second degree felony murder (and related lesser charges) and on January 24, 1992. He was sentenced to concurrent prison terms, the longest of which was twenty-five years to life imprisonment. *See People v. Stokes*, 215 A.D.2d 225, 626 N.Y.S.2d 161 (1st Dep't 1995),

---

1. The Petition is dated August 17, 1999; was mailed in an envelope postmarked September 7, 1999, and received by the Court's Pro Se office on September 9, 1999.

2. According to Judge Peck, the Petition was filed 52 days (too) late.

*aff'd,* 88 N.Y.2d 618, 648 N.Y.S.2d 863, 671 N.E.2d 1260 (1996).

The Appellate Division, First Department affirmed Stokes' conviction on May 11, 1995. *People v. Stokes,* 215 A.D.2d 225, 626 N.Y.S.2d 161 (1st Dep't 1995). Stokes sought leave to appeal, and on October 10.1996, the New York State Court of Appeals affirmed Stokes' conviction (and that of his accomplice, Orlando Nieves). *People v. Stokes,* 88 N.Y.2d 618, 648 N.Y.S.2d 863, 671 N.E.2d 1260 (1996). The Court of Appeals held that, although the underlying robbery occurred in Connecticut, since the resulting death (of a pedestrian hit by Stokes and Nieves' car during their attempt to escape) occurred in New York, Stokes and Nieves could be prosecuted in New York for felony murder. *Id.* ("At issue in these related appeals is the novel question whether New York has jurisdiction to prosecute a defendant for felony murder when the homicide takes place here but the underlying felony is committed in a neighboring State. We answer that question in the affirmative.").

On August 25, 1997, Stokes filed a motion before the state trial court to vacate his conviction pursuant to N.Y.Crim. Proc. Law ("CPL") § 440.10. The motion was denied on May 8, 1998, and the First Department denied leave to appeal on February 10, 1999. *See* Pet. ¶ 11(a)-(b).

## II. *Standard of Review*

This Court may adopt those portions of the Report to which no objections have been made and which are not facially erroneous. *See, e.g., Letizia v. Walker,* 1998 WL 567840, at *1 (W.D.N.Y. Aug.27, 1998); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). The Court conducts a de novo review of those portions of the Report to which objections have been made. *See, e.g., Letizia,* 1998 WL 567840 at *1; *Pizarro,* 776 F.Supp. at

817. Once objections are received, a district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See, e.g., DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988). Where, as here, the petitioner is pro se, "leniency is generally accorded ...." *Bey v. Human Resources Administration,* 1999 WL 31122 at *2 (E.D.N.Y. January 12, 1999).

## III. *Analysis*

■ Judge Peck correctly determined that Petitioner's conviction became final on January 8, 1997, i.e., ninety days after the New York Court of Appeals' October 10, 1996, decision affirming his conviction, "when his time to seek direct review in the United States Supreme Court by writ of certiorari expired." *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998); *see also* 28 U.S.C. § 2244(d)(1)(A) ("The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"). Judge Peck also correctly determined that the Petition is time-barred.

AEDPA imposes a one-year period of limitation (from the date when the judgment becomes final by the exhaustion of direct review, or the expiration of time to seek such review) on habeas corpus applications filed by persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1)(A). AEDPA also specifically addresses the question of tolling. It states:

> (d)(1) A 1–year period of limitation shall apply to an application for a write of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.;

. . .

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)(A)-(2).[3]

As Judge Peck correctly noted, Stokes brought his CPL § 440.10 application (to the trial court) on August 25, 1997. The trial court denied the application on May 5, 1998; and the First Department denied leave to appeal on February 10, 1999. Even assuming, arguendo, that Petitioner is entitled to a 534 day toll (i.e., while the CPL § 440.10 motion was pending from August 25, 1997 to February 10, 1999), the Petition is, nevertheless, late by 52 days.[4]

### IV. *Petitioner's Objection*

■ In his objections, Petitioner **"concedes [that] the accurate total of 417 non-tolled days had passed prior to the submission of [the] current federal habeas petition. And that it exceeds the 365 days of the one year AEDPA statute of limitations."** *See* Objections to Magistrate Peck's Report, dated July 14, 2000 (emphasis added). Petitioner contends,

however, that "entry to the [prison] law library is a nightmare." *Id.*, and that constitutes "extraordinary and/or exceptional circumstances warranting equitable tolling of [the] limitations period under [AEDPA] for filing [the] petition." *Id.* The Court disagrees.

■ The Court of Appeals for the Second Circuit recently held that to obtain the benefit of equitable tolling, a petitioner "must show that extraordinary circumstances prevented him from filing his petition on time [and] must have acted with reasonable diligence throughout the period he seeks to toll." *Id.* (citations omitted); *Burgos v. Greiner*, 1999 WL 551229 at *3 (E.D.N.Y. June 21, 1999) (equitable tolling can be applied to AEDPA time period only if "party was prevented in some extraordinary way from exercising his rights"). No such showing has been made here. Courts should "take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Torres v. Miller*, 1999 WL 714349 *6 (S.D.N.Y. August 27, 1999) (quoting *Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir.1997)).

"Problems such as insufficiency of legal assistance are not 'extraordinary' such that they warrant equitable tolling of the AEDPA limitation period. Indeed, to permit equitable tolling in all cases involving such problems would frustrate the statute's ob-

---

**3.** It is well-settled that post conviction or other collateral review does not start the one year statute of limitations to run anew. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "Rather, § 2244(d)(2) merely excludes the time a collateral attack is under submission from the calculation of the one-year statute of limitations." *Torres v. Miller*, 1999 WL 714349 at *4 (S.D.N.Y. August 27, 1999).

**4.** The AEDPA statute of limitations ran (untolled) from January 8, 1997 (when Stokes'

conviction became final) until August 25, 1997 (when the CPL § 440.10 application was filed), i.e., 229 days. The statute of limitations then began to run again on February 10, 1999 (when the First Department denied leave to appeal), and did so uninterrupted until August 17, 1999 (when Stokes filed the instant Petition), i.e., 188 days. Thus, between January 8, 1997 and August 17, 1999, there were a total of 417 untolled days, making Stokes' Petition untimely by 52 days.

jectives, because many inmates could make the same claims." *Martinez v. Kuhlmann*, 2000 WL 622626 at *4 (S.D.N.Y. May 15, 2000) (quoting *Silvestre v. United States*, 55 F.Supp.2d 266, 268 (S.D.N.Y. 1999)); *Armand v. Strack*, 1999 WL 167720 at *4 (E.D.N.Y. Feb.19, 1999) ("**petitioner's alleged inability to receive 'full assistance' from the [prison] library staff" did not represent " 'extraordinary' or 'rare and exceptional' circumstances, making it 'impossible to file his petition' "**); *Fennell v. Artuz*, 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would undermine the AEDPA statute of limitations).

### V. *Order*

For the foregoing reasons, the Court incorporates the Report in its entirety and, for the reasons stated therein and herein, finds that the Petition is time-barred. The Clerk is respectfully requested to enter an order dismissing the Petition.

### *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge. To the Honorable Richard M. Berman, United States District Judge:

Petitioner John Stokes seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his conviction in Supreme Court, Bronx County, of second degree felony murder (and related lesser charges) and sentence of twenty-five years to life imprisonment. (Dkt. No. 1: Pet. ¶¶ 1–4.) Stokes' present federal habeas petition is dated August 17, 1999, was mailed in an envelope postmarked September 7, 1999, and was received by the Court's Pro Se office on September 9, 1999. (Pet. at 2, 7 & envelope.)

For the reasons set forth below, Stokes' petition should be dismissed as barred by the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

### *PROCEDURAL BACKGROUND*

#### *State Proceedings*

Stokes was convicted in Supreme Court, Bronx County, of second degree felony murder (and related lesser charges) and on January 24, 1992, sentenced to concurrent prison terms, the longest of which was twenty-five years to life imprisonment. (Pet.¶¶ 1–4.) *See also People v. Stokes*, 215 A.D.2d 225, 626 N.Y.S.2d 161 (1st Dep't 1995), *aff'd*, 88 N.Y.2d 618, 648 N.Y.S.2d 863, 671 N.E.2d 1260 (1996).

The First Department affirmed Stokes' conviction on May 11, 1995. *People v. Stokes*, 215 A.D.2d 225, 626 N.Y.S.2d 161 (1st Dep't 1995). (*See also* Pet. ¶ 9.) Stokes sought leave to appeal, and on October. 10, 1996, the New York Court of Appeals affirmed Stokes' conviction and that of his .accomplice, Orlando Nieves. *People v. Stokes*, 88 N.Y.2d 618, 648 N.Y.S.2d 863, 671 N.E.2d 1260 (1996). The New York Court of Appeals held that although the underlying robbery felony occurred in Connecticut, since the resulting death (of a pedestrian hit by defendants' car during their attempt to escape) occurred in New York, Stokes and Nieves could be prosecuted in New York for felony murder. *Id.*

On August 25, 1997, Stokes filed a motion in the trial court to vacate his conviction pursuant to CPL § 440.10. (Pet. ¶ 11(a); *see also* Stokes 2/17/00 Aff. at 1.) According to Stokes, the motion was denied on May 8, 1998, and the First Department denied leave to appeal on February 10, 1999. (Pet.¶ 11(a)-(b).)

#### *Stokes' Present Federal Habeas Petition*

Stokes' present federal habeas petition is dated August 17, 1999, was mailed in an

envelope postmarked September 7, 1999, and was received by the Court's Pro Se Office on September 9, 1999. (Pet. at 2, 7 & envelope.) Stokes' habeas petition asserts four claims: (1) that he cannot be convicted of felony murder in New York since no element of the underlying robbery felony took place in New York (Pet. ¶ 12(A)); (2) the unauthorized use of a vehicle charge fails for the same reason (Pet.¶ 12(B)); (3) he was deprived of a fair trial by the exclusion of exculpatory evidence (Pet.¶ 12(C)); and (4) the indictment was defective because it alleged that the robbery took place in the Bronx (Pet. ¶ 12(D)).

## ANALYSIS

### STOKES' PETITION IS BARRED BY THE AEDPA'S STATUTE OF LIMITATIONS

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA instituted a one-year statute of limitations for habeas corpus petitions filed after April 24, 1996:

> (d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> . . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Here, Stokes' conviction became final on January 8, 1997, ninety days after the New York Court of Appeals' October 10, 1996 decision affirming his conviction, "when his time to seek direct review in the United States Supreme Court by writ of certiorari expired." *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998); *see, e.g., Forman v. Artuz*, 99 Civ. 9046, 2000 WL 378056 at *3 (S.D.N.Y. April 11, 2000) (Peck, M.J.); *Martinez v. Stinson*, 98 Civ. 7718, 2000 WL 284191 at *2 (S.D.N.Y. March 9, 2000) (Sprizzo, D.J. & Peck, M.J.).[1]

■ The Second Circuit recently confirmed that the state collateral attack toll of § 2244(d)(2) does not start the one-year statute of limitations to run anew; such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year statute of limitations by bringing a belated state collateral attack. *E.g., Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000); *Forman v. Artuz*, 2000 WL 378056 at *3; *Martinez v. Stinson*, 2000 WL 284191 at *3; *Torres v. Miller*, 99 Civ. 0580, 1999 WL 714349 at *3 (S.D.N.Y. Aug.27, 1999) (Mukasey, D.J. & Peck, M.J.); *Varsos v. Portuondo*, 1999 WL 558147 at *3; *DeVeaux v. Schriver*, 1999 WL 1216298 at *4. "Rather, § 2244(d)(2) merely excludes the time a collateral attack is under submission from the calculation of the one-year statute of limitations." *Torres v. Miller*,

---

1. *See also, e.g., Lugo v. Kuhlmann*, 68 F.Supp.2d 347, 359 (S.D.N.Y.1999) (Patterson, D.J. & Peck, M.J.) (citing cases); *Varsos v. Portuondo*, 98 Civ. 6709, 1999 WL 558147 at *2 (S.D.N.Y. July 9, 1999) (Batts, D.J. & Peck, M.J.); *DeVeaux v. Schriver*, 98 Civ. 7563, 1999 WL 1216298 at *4 (S.D.N.Y. April 29, 1999) (Peck, M.J.), rep. & rec. adopted by 1999 WL 1095580 (S.D.N.Y. Dec.3, 1999) (Mukasey, D.J.); *Torres v. Irvin*, 33 F.Supp.2d 257, 271 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.). Exclusion of the ninety-day certiorari period would not change the analysis or result in this case.

1999 WL 714349 at *4 (citing cases); *accord, e.g., Smith v. McGinnis*, 208 F.3d at 17; *Forman v. Artuz*, 2000 WL 378056 at *3.

Stokes brought his CPL § 440.10 application on August 25, 1997. (*See* page 2 above.) The trial court denied the motion on May 5, 1998 and the First Department denied leave to appeal on February 10, 1999. (*See* page 2 above.) On the assumption that the CPL § 440.10 motion was pending for that entire period, Stokes is entitled to a toll from August 25, 1997 to February 10, 1999, a toll of 534 days.

Thus, from January 8, 1997 (expiration of the 90-day certiorari period) until the August 25, 1997 filing of Stokes' CPL § 440.10 motion, 229 days of the one-year limitations period had run; Stokes' CPL § 440.10 motion entitled him to a toll from August 25, 1997 until the First Department's denial of leave to appeal on February 10, 1999; from February 10, 1999 until the August 17, 1999 date of Stokes' habeas petition,[2] another 188 days of the one-year period had run. Thus, a total of 417 non-tolled days had passed when Stokes filed his current federal habeas petition. Since that is more than 365 days, Stokes' habeas petition is barred by the one-year AEDPA statute of limitations.[3]

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P.

6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

May 18, 2000.

---

**2.** It appears more likely that Stokes' petition was mailed on or about the September 7, 1999 date it is postmarked. Nevertheless, the Court will give Stokes the benefit of the doubt by using the August 17, 1999 date on Stokes' petition.

**3.** Another and perhaps simpler calculation is as follows: the period from January 8, 1997 until April 17, 1999 is 951 days, but is reduced by a toll of 534 days from the pendency of Stokes' CPL § 440.10 motion, for a total of 417 untolled days.