THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARGARET OLSON, Defendant-Appellant.

Second District    No. 2—03—1038

Opinion filed August 6, 2004.

Terry Sullivan and Nancy J. Nicol, both of Sullivan Firm, Ltd., of Rolling Meadows, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

After a bench trial, defendant, Margaret Olson, was convicted of forgery (720 ILCS 5/17—3(a)(1) (West 1998)) and sentenced to a year of conditional discharge. On appeal, defendant contends that she was not proved guilty beyond a reasonable doubt. We affirm.

The indictment alleged that, with the intent to defraud, defendant knowingly made a document capable of defrauding another. The allegedly fraudulent document is a 1999 quitclaim deed to real estate located in Washburn County, Wisconsin. Some background information, contained in documents admitted into evidence at trial, is necessary to place the deed in context. In 1985, defendant's mother, who owned the property in fee, died intestate. On November 18, 1989, defendant, as the personal representative of her mother's estate, conveyed the property from the estate to herself. On December 8, 1989, defendant, by warranty deed, conveyed the property to herself, her husband, Thomas Hueser, and her two daughters, Margo Hueser, now known as Margo Rinella, and Holly Hueser, now known as Holly Kabbe. The four grantees became joint tenants, each having a 25% interest in the property. In 1993, Thomas Hueser died, and, in July 1997, his interest in the property was officially terminated. As a result, defendant, Rinella, and Kabbe each owned a 33⅓% interest in the property as joint tenants. In 1996, defendant married Donald Olson. The allegedly fraudulent quitclaim deed is dated November 4, 1999, and was recorded on November 9, 1999, in Washburn County. The deed recites that defendant, Rinella, and Kabbe quitclaim their interest in the property to themselves and to Olson. The deed is ostensibly signed by defendant, Rinella, Kabbe, and Olson. However, it is undisputed that defendant forged her daughters' signatures after they refused to sign the deed. The deed contains an acknowledgment in which Marti Hubble, a notary public, states that, on November 4, 1999, defendant, Rinella, Kabbe, and Olson personally came before Hubble in Du Page County, Illinois, and executed the deed.

At trial, Rinella testified as follows. In July 1997, defendant asked

Rinella to sign some documents so that Thomas Hueser's name could be removed from the deed to the property and replaced with Olson's name. Rinella refused to sign the papers. Defendant asked again, "then talked about doing a trust," but Rinella told her to "leave it as it was in one-third." Rinella wanted to hold onto her interest in the property and did not want Olson to "get it."

In November 1999, defendant again asked Rinella to sign some documents. Rinella refused. Defendant ceased her requests. In April 2001, Rinella checked with the Washburn County register of deeds' office and learned that what purported to be her and Kabbe's signatures were on a quitclaim deed that gave Olson, defendant, Rinella, and Kabbe each a 25% interest in the property. Defendant admitted to Rinella that she had forged Rinella's name on the deed.

In June 2001, Rinella offered not to make any complaints against defendant to law enforcement if defendant agreed, *inter alia*, that Olson would waive any interest in the property. Defendant declined Rinella's offer, although she said that she was willing to undo the quitclaim deed. In August 2001, Rinella contacted the Elmhurst police department. On November 29, 2001, Rinella signed a criminal complaint against defendant even though she knew that, the previous month, defendant filed an action in Wisconsin to void the 1999 deed. In June 2002, the Wisconsin court declared the deed void.

Michael Campise of the Elmhurst police department testified as follows. On August 17, 2001, he spoke to defendant. After Campise showed defendant the 1999 deed, she admitted that she had forged her daughters' signatures and had then presented the deed to Marti Hubble, a notary public, at a bank in Elmhurst. Defendant explained that she had wanted to give Olson an interest in the property. She knew that, under Wisconsin law, her daughters' signatures were required. Because they were unwilling to go along, defendant forged their signatures.

The parties stipulated that Hubble would testify as follows. At all pertinent times, she worked at a bank in Elmhurst, in Du Page County. Her duties included notarizing documents. On November 4, 1999, defendant asked her to notarize the quitclaim deed. Hubble could not recall whether the signatures of Olson, Rinella, and Kabbe were already on the deed. However, Hubble normally did not certify a person's signature unless the person was present. After certifying the deed, Hubble gave it back to defendant.

Defendant's first witness, Holly Kabbe, testified that, in July 2001, she talked with Rinella about some conditions that Rinella wanted to impose before allowing defendant to undo the 1999 deed. Later, Kabbe asked to have her name removed from the indictment against defendant because she did not consider herself a victim.

Defendant testified as follows. After she obtained full title to the Wisconsin property, she became concerned that, if anything happened to her, the property would have to go through probate in Wisconsin. Therefore, in 1989, she put the property into joint tenancy, giving herself, Thomas Hueser, Rinella, and Kabbe each a 25% interest in it. After Thomas Hueser died, defendant and her daughters each had a 33⅓% interest in the property. Later, defendant married Olson. Defendant testified that, in 1999, she wanted Olson to have a share of the property, just as Hueser had before he died. However, she also testified that she wished to put the property into a trust to make it "secure for [her] daughters only."

Defendant knew that to give Olson a share of the property, she needed her daughters' signatures. However, because Rinella and Kabbe would not sign the deed, defendant forged their signatures, then had Hubble notarize the deed at the bank in Elmhurst. Later, defendant filed the deed in Washburn County. Defendant never consulted a lawyer. She testified that she never intended to dilute her daughters' interests in the property from 33⅓% each to 25% each.

The trial court found defendant guilty. The trial court concluded that defendant knew that she needed her daughters' signatures on the deed in order to give Olson an interest in the property and that defendant intended to defraud not only her daughters but also the Washburn County register of deeds. Defendant was sentenced to a year of conditional discharge. She timely appealed.

On appeal, defendant contends that the State did not prove her guilty beyond a reasonable doubt of forgery. Defendant contends specifically that the State did not prove (1) that the offense occurred in Illinois, or (2) that she acted with the intent to defraud when she forged her daughters' signatures on the deed. For the reasons that follow, we disagree.

In considering a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992); *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

We consider first whether the State proved that the offense occurred in Illinois. Jurisdiction must be proved beyond a reasonable doubt. *People v. Holt*, 91 Ill. 2d 480, 492 (1982). Here, the State could satisfy its burden by proving that the offense was committed either

wholly or partly within Illinois. See 720 ILCS 5/1—5(a)(1) (West 1998). Defendant asserts that the trial court could only speculate that she was in Illinois when she forged her daughters' signatures on the quitclaim deed. Therefore, she maintains, the State did not prove jurisdiction. We disagree.

Defendant's contention assumes that the offense of which she was convicted consisted solely of forging the signatures. This assumption is incorrect. As charged here, a person commits forgery when, with the intent to defraud, she knowingly *"makes* or alters *any document* apparently capable of defrauding another in such manner that it purports to have been made by another or *** by authority of one who did not give such authority."* (Emphasis added.) 720 ILCS 5/17—3(a)(1) (West 1998). Hence, the State did not need to prove that defendant was in Illinois when she affixed the forged signatures to the deed. Instead, because the charged offense was defendant's making of the fraudulent deed, the State needed to prove only that the deed was, at least in part, "made in Illinois."

The State met its burden. It is undisputed that defendant induced Hubble to sign the deed's acknowledgment, in defendant's presence, in Elmhurst. Thus, the deed was made partly in Illinois, and defendant was fully responsible for this phase of the production. Moreover, obtaining Hubble's signature was no trivial matter. By signing the acknowledgment, Hubble, a notary public, enabled defendant to record the deed. See Wis. Stat. §§ 706.05, 706.07 (1999). Recording the conveyance was essential to make it valid as against any subsequent good-faith purchaser. See Wis. Stat. § 706.08(1)(a) (1999). We conclude that the State proved jurisdiction by establishing beyond a reasonable doubt that defendant's offense was committed partly in Illinois (see 720 ILCS 5/1—5(a)(1) (West 1998)).

We consider second whether the State proved beyond a reasonable doubt that defendant acted with the intent to defraud (see 720 ILCS 5/17—3(a)(1) (West 1998)). Defendant contends that the evidence did not prove that she intended to defraud Rinella but shows only that she intended to assure that the property stayed in the family and that Olson could reside on the property. Defendant notes that she is not a lawyer and did not consult one when she prepared and filed the deed in 1999.

Defendant's contention fails for two reasons. First, it rests on an erroneous legal premise. Defendant assumes that the State had to prove that she intended to defraud Rinella specifically (or, perhaps, Rinella and Kabbe, as they would suffer identical losses). However, the forgery statute defines "intent to defraud" broadly as "an intention *to cause another* to assume, *create,* transfer, *alter* or terminate *any right,*

obligation or power *with reference to any* person or *property.*"
(Emphasis added.) 720 ILCS 5/17—3(b) (West 1998). The State did not
need to prove that defendant intended to cause anyone any pecuniary
loss. *People v. Muzzarelli,* 331 Ill. App. 3d 118, 122 (2002). Thus,
defendant had the requisite criminal intent if she intended to cause
the Washburn County register of deeds to record the quitclaim deed
and thus create a right in the property for Olson, alter the rights of
Rinella and Kabbe in the property, and affect the rights of possible
subsequent purchasers. The trial court found that defendant had such
an intent, and the evidence amply supports the trial court's finding.
Therefore, even if the State did not prove that defendant sought to
harm Rinella, the State still proved fraudulent intent beyond a reasonable doubt.

Second, even had the State been required to prove that defendant
intended to defraud Rinella, the trial court also found that she had
such an intent, and the evidence supports this finding as well.
Defendant emphasizes that her professed motives were simply to
protect Olson and her family. However, even accepting this explanation, the trial court could conclude that defendant sought to achieve
these ends by perpetrating a fraud against Rinella and Kabbe.

Although defendant is not a lawyer and did not consult one, by
1999 she had long held the property and had filed several legal documents affecting various interests in the property. Rinella testified that,
when defendant suggested giving Olson an interest in the property,
Rinella asked her to "leave it as it was in one-third." From this
testimony, the trial court could infer that Rinella placed defendant on
notice that defendant's plan would dilute Rinella's interest in the
property. Thus, the trial court could infer that, when defendant created and recorded the spurious deed, she intended to defraud Rinella.
Although defendant testified that she did not intend to dilute Rinella's
interest, the trial court could conclude that her deed spoke louder
than her words. Again, however, we stress that the forgery statute is
sufficiently broad that the State did not need to prove that defendant
intended to harm Rinella specifically.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and GILLERAN JOHNSON, JJ., concur.